No. 99-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 116

299 Mont. 428

2 P. 3d 229

IN RE THE MARRIAGE OF

DENISE M. WINCKLER,

Petitioner and Respondent,

and

DANIEL R. WINCKLER,

Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jennifer L. Scheinz, Attorney at Law, Helena, Montana

For Respondent:

Thomas K. Harlen, Harlen, Thompson & Parish, P.C., Helena, Montana

Submitted on Briefs: January 13, 2000

Decided: May 4, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Petitioner, Denise M. Winckler, filed a petition for dissolution of her marriage to Respondent, Dan R. Winckler, in the District Court for the First Judicial District in Lewis and Clark County. The District Court entered default judgment against the Respondent for failure to appear. The Respondent moved to set aside the default pursuant to Rules 55(c) and 60(b), M.R.Civ.P. The District Court failed to rule within 60 days and, therefore, his motion was deemed denied. The Respondent appeals the District Court's failure to set aside the default judgment entered against him. We reverse the judgment of the District Court.

¶2 The sole issue presented on appeal is whether the District Court abused its discretion when it denied the Respondent's motion to set aside the default judgment.

¶3 Denise and Dan Winckler were married on July 20, 1996 in Helena, Montana. On November 9, 1998, Denise filed a Petition for Dissolution in Lewis and Clark County. Shortly thereafter, Denise handed Dan a copy of the Petition for Dissolution and Summons, along with a letter dated November 9, 1998, from Michael Kakuk, Denise's attorney at that time. Kakuk's letter states, in relevant part:

> I have enclosed copies of the petition and summons. Please review this important information carefully. If you are comfortable with the material, please sign the acknowledgment and return it in the envelope provided. If you have retained an

attorney, please pass the information along to him or her.

Denise and I are working together to ensure that each party gets what is rightfully theirs under Montana law - an equitable distribution of the marital property estate. Hopefully, at some point in the very near future, you and Denise will negotiate a marital property settlement that reflects this goal.

¶4 In early December 1998, Kakuk contacted Dan by telephone at Dan's residence in Las Vegas, Nevada. Kakuk asked Dan if he had reviewed the Petition for Dissolution. Dan replied that he had only had an opportunity to glance over it, and that he had not yet retained an attorney. According to Dan's affidavit, Kakuk then informed him that Kakuk needed his signature on the documents to verify that Dan was aware that Denise had filed for divorce, so that they could attempt to reach a property settlement agreement. However, according to Kakuk's affidavit, Kakuk did not say "anything to the Respondent that would reasonably lead him to believe that he was only signing a legal verification of his awareness that his wife had filed for divorce," nor did he "inform the Respondent that the Petitioner was preparing a settlement offer."

¶5 Following his conversation with Kakuk, Dan signed the acknowledgment of receipt of summons and petition and sent it back to Kakuk, who received them on December 10, 1998. However, because Kakuk did not receive the acknowledgment within the specified time frame, prior to receipt of the acknowledgment, Kakuk had Dan personally served with the summons and petition on December 8, 1998. According to Dan's affidavit, based on his conversation with Kakuk, he believed that he had responded appropriately to Denise's Petition for Dissolution, and took no further action, because he believed that he and Denise could reach a property settlement agreement. Dan further alleged in his affidavit that he believed, based upon his conversation with Kakuk and the letter written by Kakuk, that Denise would be submitting a proposed property settlement agreement for his consideration.

¶6 On December 29, 1998, an order for default was entered against Dan. On January 5, 1999, the District Court entered a final decree following a hearing to consider the apportionment of the marital estate. A notice of entry of judgment was also filed with the District Court on January 5, 1999, and subsequently mailed to Dan in Las Vegas, Nevada. The final decree apportions most of the marital debt in an amount of $71,665.53, in addition to any unknown debt, to Dan, based on Denise's assertion that the debt was incurred by Dan.

¶7 Upon receipt of the Notice of Entry of Judgment, Dan contacted and retained his present counsel, and then filed a motion to alter or amend judgment, for a new trial, or for relief from judgment on January 20, 1999. On January 27, 1999, Dan moved for and was granted an extension of time in which to file his brief and affidavit in support of his posttrial motions. Dan filed his brief on February 5, 1999. On February 19, 1999, Kakuk withdrew as counsel for Denise and simultaneously requested and was granted an extension of time for Denise to file her response brief. Denise then retained her present attorney, Thomas Harlen.

¶8 On March 29, 1999, Denise's new attorney, Harlen, moved for and was granted an extension of time in which to file his responsive brief. Harlen filed his brief on April 15, 1999. On April 27, 1999, the parties filed a stipulation which provided that Dan would have until May 3, 1999 in which to file his reply brief.

¶9 Subsequently, the parties realized that because the District Court had not issued a formal opinion within 60 days of the motion, pursuant to Rule 60(c), M.R.Civ.P., the motion was deemed denied upon expiration of the 60 days. Following this realization, and after an extension of time in which to do so, Dan filed his notice of appeal.

## STANDARD OF REVIEW

¶10 When a district court denies a motion to set aside a default judgment, we review the district court's denial for a slight abuse of discretion. *See Empire Lath & Plaster, Inc. v. American Cas. Co. of Reading, Pa.* (1993), 256 Mont. 413, 416, 847 P.2d 276, 278. Our policy favors a resolution on the merits. *See In re Marriage of Broere* (1994), 263 Mont. 207, 209, 867 P.2d 1092, 1093. The party seeking to set aside a default judgment has the burden of proof. *See Siewing v. Pearson Co.* (1987), 226 Mont. 458, 461, 736 P.2d 120, 122.

## DISCUSSION

¶11 Did the District Court abuse its discretion when it denied the Respondent's motion to set aside the default judgment?

¶12 Dan asserts that the District Court abused its discretion when it refused to set aside the default judgment entered against him. Dan contends that he has met his burden for setting aside a default judgment, pursuant to Rules 55(c) and 60(b), M.R.Civ.P. Dan argues that

he proceeded with diligence in filing his Rule 60(b), M.RCiv.P. motion within one week of his discovery of default; that his neglect was excusable based on representations made by Denise's attorney, Kakuk; that the judgment, if permitted to stand, will affect him injuriously; and that he has a defense to Denise's cause of action because the property division is manifestly inequitable.

¶13 In response, Denise contends that Rule 60(b), M.R.Civ.P., requires that Dan show some justification for his failure to appear, other than mere carelessness or ignorance of the law. Accordingly, Denise argues that Dan has failed to establish mistake, inadvertence, surprise, excusable neglect, or any other justifiable reason, pursuant to Rule 60(b), M.R. Civ.P., in order to set aside a default judgment.

¶14 Pursuant to Rule 55(c), M.R.Civ.P., a default may be set aside under the following circumstances:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

¶15 As stated in Rule 55(c), M.R.Civ.P., a default may only be set aside "for good cause shown." In *Blume v. Metropolitan Life Insurance Company* (1990), 242 Mont. 465, 791 P.2d 784, this Court clarified the criteria which must be satisfied by a defaulting party to establish good cause. Those criteria are: (1) the defaulting party proceeded with diligence; (2) the defaulting party's neglect was excusable; (3) the defaulting party has a meritorious defense to the claim; and (4) the judgment, if permitted to stand, will affect the defaulting party injuriously. *See In re Marriage of McDonald* (1993), 261 Mont. 466, 468, 863 P.2d 401, 402.

¶16 Rule 60(b), M.R.Civ.P. provides the following bases for setting aside a judgment:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . . (6) any other reason justifying relief from the operation of the judgment.

¶17 When reviewing the denial of a Rule 60(b) motion for setting aside a default judgment, the moving party must first satisfy the Rule 55(c) criteria for good cause and then satisfy the criteria in Rule 60(b). *Blume,* 242 Mont. at 467, 791 P.2d at 786. In *Cribb*

*v. Matlock Communications, Inc.* (1989), 236 Mont. 27, 30, 768 P.2d 337, 339, we determined that the "good cause standard under Rule 55(c), M.R.Civ.P, should be applied more flexibly and leniently than the excusable neglect standard under Rule 60(b), M.R.Civ. P."

¶18 Our review of the record reveals that upon receipt of the Notice of Default Judgment, Dan acted with diligence. Dan immediately retained Montana counsel and filed his posttrial motions for relief from judgment on January 20, 1999, within one week of receipt of the notice. Additionally, the motion to set aside the judgment was filed within 60 days of entry of judgment, in accordance with Rule 60(b), M.R.Civ.P.

¶19 Dan must also prove that his neglect was excusable. In his affidavit, Dan stated as follows:

> I expected to hear from either Mr. Kakuk or Denise to discuss the property split . . . . I also didn't think that I needed an attorney yet since we hadn't started negotiating a settlement. Based upon my telephone conversation with Mr. Kakuk, it was my understanding that the paper which I signed was legal verification that I was aware that Denise wanted a divorce, and that, until we had a final agreement, I couldn't sell any of our joint assets. I thought that the 20-day limitation only pertained to my signing and sending the paper back to Mr. Kakuk. I did not understand that I needed to do anything else within 20 days, and I certainly had no idea that I could lose everything by default under these circumstances. What I expected, was to hear from Denise or her attorney with a list of what she wanted in a settlement.

¶20 Although Kakuk's affidavit states that he did not "inform the Respondent that the Petitioner was preparing a settlement offer," we conclude that his letter to Dan delivered with the petition and summons, was misleading to a nonlawyer even though that was not Kakuk's intention. The letter states that "Denise and I are working together to ensure that each party gets what is rightfully theirs under Montana law . . . hopefully at some point in the very near future, you and Denise will negotiate a marital property settlement that reflects this goal." We conclude that Dan's belief, although mistaken, that he would receive a settlement proposal from Kakuk before it was necessary to respond to the petition, satisfies the requirement that his neglect be excusable.

¶21 Additionally, Dan must show that he has been affected injuriously by the default judgment and that he has an actual defense to the claim on its merits. The record reveals

that the judgment apportions a majority of the marital debt, in an amount over $70,000 to Dan, based on Denise's assertions that the debt benefitted Dan's business, while only approximately $4000 of the marital debt was apportioned to Denise. Dan denies both the amount of the debt and the allegation that it was incurred for his benefit. We conclude that the judgment, if permitted to stand, will adversely affect Dan and that he has a defense to Denise's claim based on the merits because the division of the marital estate must be equitable.

¶22 Because we conclude that Dan has fulfilled the "good cause shown" requirement of Rule 55(c), M.R.Civ.P, we must then turn our inquiry to the "mistake, inadvertence, surprise, or excusable neglect" requirement of Rule 60(b), M.R.Civ.P. In *In re Marriage of Broere*, 263 Mont. at 209, 867 P.2d at 1094, we defined a "mistake" for Rule 60(b) as: "some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence." We conclude that Dan's default was unintentional, based upon his mistaken belief that Denise's attorney was going to prepare a property settlement proposal and that his acknowledgment of service was the only act required of him until such time as the parties negotiated an agreement.

¶23 Because Dan has fulfilled the requirements of Rules 55(c) and 60(b), M.R.Civ.P., and because our policy is to favor resolution on the merits, we conclude that the District Court's refusal to set aside the default judgment entered against Dan, amounts to an abuse of discretion. Therefore, we reverse the decision of the District Court and remand for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART