No. 00-675

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 195N


GENERAL MILLS, INC.,

Plaintiff and Respondent,

v.

RALPH BROWN and WADE BROWN,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

James A. Patten, West, Patten, Bekkedahl & Green, P.L.L.C., Billings, Montana

For Respondent:

K. Dale Schwanke, Jardine, Stephenson, Blewett & Weaver, P.C., Great Falls, Montana


Submitted on Briefs: April 19, 2001
Decided: September 20, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Ralph and Wade Brown appeal from an order entered by the Montana Eighth Judicial District Court, Cascade County, reinstating a default judgment against them. The following issue is dispositive of this appeal: Did the District Court abuse its discretion when it set aside its June 5, 2000, Order vacating the default judgment?

¶3 We reverse.

## BACKGROUND

¶4 At the outset we note that the tangled procedural history of this case, the likes of which is usually only found in law school exams, was a challenge to unravel. Notwithstanding, we shall attempt to set forth a summary of the pertinent facts as taken from the pleadings and court file.

¶5 On May 27, 1999, General Mills, Inc., (GMI) filed a complaint in the Eighth Judicial District, Cascade County, asserting that the Browns were liable to GMI in the amount of $17,278.12 plus interest and costs pursuant to a grain sales contract. The Browns were served with process in Yellowstone County on July 1, 1999.

¶6 A default was entered against the Browns on July 23, 1999. The Browns' attorney, James Patten, asserted that he prepared and dictated an appearance on behalf of his clients prior to the deadline. However, because of an extraordinary amount of work his secretary was processing at the time, the appearance was not typed and presented to Patten for his review and filing until after the time for an appearance had run. On July 27, 1999, four days after the default was taken, Patten telephoned counsel for GMI and requested additional time. GMI's attorney, Dale Schwanke, informed Patten that the default had

already been entered. Patten then requested that Schwanke obtain permission from GMI to vacate the default. Schwanke, via fax sent in late afternoon on July 28, 1999, advised Patten that GMI would not agree to vacate the default and that GMI intended to press on for a default judgment.

¶7 The next morning, on July 29, 1999, Patten attempted unsuccessfully to fax file a motion to vacate the default. However, Patten used an outdated fax number for the Cascade County Clerk of Court and the clerk never received the motion. On the morning of July 30, 1999, GMI presented a default judgment to the clerk who immediately entered judgment against the Browns. In the afternoon, after the default judgment had already been entered, the clerk received the hard copy of the previously faxed motion to vacate the default.

¶8 On August 2, 1999, notice of entry of judgment by default was filed by GMI. On August 11, 1999, the District Court, apparently unaware that the default judgment had been entered, granted the Browns' motion to vacate the default (but not the default judgment), finding that their failure to appear was not willful, that GMI would not be prejudiced by vacating the default, and that the defendants should be provided an opportunity to present a defense. On August 31, 1999, GMI moved to vacate the order setting aside the default, asserting that the Browns did not have a meritorious defense and that the order vacating the default was a nullity because a default judgment had already been entered. The Browns opposed the motion and a hearing was held on December 2, 1999.

¶9 After five months had elapsed, on May 19, 2000, the District Court filed an Order vacating its Order of August 11, 1999, setting aside the default, concluding that the said Order was improvidently entered. The May 19, 2000, Order specifically stated that it was without prejudice to the Browns filing additional motions.

¶10 On May 25, 2000, the Browns filed a motion to vacate the default judgment entered on July 30, 1999. On June 5, 2000, GMI filed objections to the Browns' motion. Also on June 5, 2000, the District Court, presumably unaware that the objections had been filed, vacated the default judgment.

¶11 On June 13, 2000, GMI filed a motion to vacate the order setting aside the default judgment claiming that the order was entered prior to the expiration of the ten day period available for GMI to object to the motion and because the order may have been made

without jurisdiction. The Browns filed a response noting that GMI had filed its objection prior to the Court issuing its order vacating the default judgment.

¶12 On August 11, 2000, the District Court vacated its Order of June 5, 2000, and reinstated the default judgment entered July 30, 1999, "as if it had not been vacated." The Browns appeal from the August 11, 2000, Order reinstating the default judgment against them.

## STANDARD OF REVIEW

¶13 When a district court denies a motion to set aside a default judgment, we review the district court's denial for a slight abuse of discretion. Our policy favors trials on the merits. *In re Marriage of Winckler*, 2000 MT 116, ¶ 10, 299 Mont. 428, ¶ 10, 2 P.3d 229, ¶ 10 (citations omitted).

## DISCUSSION

¶14 Did the District Court abuse its discretion when it set aside its June 5, 2000, Order vacating the default judgment?

¶15 Pursuant to Rule 55(c), M.R.Civ.P., a default entered by the clerk may be set aside by the trial court for "good cause shown . . . and, if a judgment by default has been entered [the trial court], may likewise set it aside in accordance with Rule 60(b)." *Winckler*, ¶ 14. Defendants may establish "good cause" by showing: (i) that they proceeded with due diligence; (ii) the existence of excusable neglect; (iii) that the judgment would be injurious to them if allowed to stand; and (iv) that they have a meritorious defense to the claim. *See Blume v. Metropolitan Life Ins. Co.* (1990), 242 Mont. 465, 467, 791 P.2d 784, 786. The policy behind the liberal rule to vacate a default judgment is that this Court favors trial on the merits. *In Re Marriage of Broere* (1994), 263 Mont. 207, 209, 867 P.2d 1092, 1093.

¶16 The Browns argue that the District Court abused its discretion when it reinstated the default judgment against them. The Browns maintain that they have sufficiently established the requisite good cause to set aside the default judgment entitling them to a trial on the merits. They argue that they proceeded with due diligence upon notice of the default, their neglect that precipitated the default was excusable, the judgment will adversely affect them, and they have a meritorious defense to the GMI claim. GMI insists that the Browns cannot claim excusable neglect and that they cannot muster a meritorious

defense.

¶17 We conclude that the Browns have satisfied the "slight abuse of discretion" necessary to vacate the default judgment entered against them. As hinted above, the procedural history in this case is unusual. On August 11, 1999, the District Court set aside the default, unaware that the default judgment had been entered on July 30, 1999. When the District Court entered its Order on May 19, 2000, vacating its Order of August 11, 1999, setting aside the default, the Browns promptly filed their motion to set aside the default judgment pursuant to Rule 60(b)(1) and (6), M.R.Civ.P.

¶18 From a review of the District Court's Order of August 11, 2000, it appears the court concluded that it may not have had jurisdiction to enter its Order on June 5, 2000, vacating the default judgment. Although not explained in its Order, it may be because it concluded that the Browns' motion to set aside the default judgment was brought pursuant to Rule 60 (b)(1), M.R.Civ.P., which requires under the circumstances that such a motion be filed within 60 days after notice of entry of judgment. Notice of entry of judgment for the July 30, 1999, judgment was filed by GMI on August 2, 1999. The Browns' motion to vacate the default judgment was not filed until May 25, 2000, obviously more than 60 days after the notice of entry.

¶19 Although not directly addressed by either party, we question whether the July 30, 1999, judgment was valid inasmuch as the court set aside the default upon which the judgment was based. Apparently both counsel for GMI and the District Court believed that it was necessary to vacate the August 11, 1999, Order setting aside the default to breathe life into the July 30, 1999, judgment. GMI moved to vacate the August 11, 1999, Order on August 31, 1999, a full month after the default judgment was entered. The District Court granted the motion and vacated the default on May 19, 2000.

¶20 Since the Browns alternatively based their motion to set aside the default under Rule (60)(b)(1) and (6), M.R.Civ.P., the District Court could have considered their motion under Rule 60(b)(6), M.R.Civ.P., which does not have the 60 day filing limitation. We recognize that the grounds set out in Rule 60(b)(1)-(3) cannot form a basis for relief under Rule 60(b)(6), M.R.Civ.P. Otherwise the time limit contained in Rule 60(b)(1)-(3) would have no meaning. The District Court may have understandably reached this determination.

¶21 However, we conclude that the peculiar procedural history of this case justifies such relief. The Browns were most likely lulled into thinking that the default judgment was a

nullity when the District Court set aside the default on the very same day that it entered the default judgment. Consequently, they saw no need to file a Rule 60(b)(1) motion seeking relief from the judgment. It was not until May 19, 2000, when the District Court set aside its order vacating the default, that the judgment came back to life. We believe that under this unusual procedural history, the Browns are entitled to relief. The District Court erred in denying them relief pursuant to Rule 60(b)(6), M.R.Civ.P., because there were sufficient reasons "justifying relief from the operation of the judgment."

¶22 We further conclude that the Browns have established "good cause" to set aside the judgment. Under the circumstances, they proceeded with due diligence. Their neglect was excusable and certainly they would suffer harm if the judgment were allowed to stand. Finally, the Browns have set forth a prima facie defense to GMI's claim. One of the Browns did not sign the contract. The Browns also argue that the pricing mechanism is not set out in the contract.

¶23 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JAMES C. NELSON

/S/ JIM RICE