No. 03-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 25

IN RE THE MARRIAGE OF

FLORENCE SHANNON,

Petitioner and Respondent,

and

WILLIAM SHANNON,

Respondent and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DR 2002-90
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Karl Knuchel, Attorney at Law, Livingston, Montana

For Respondent:

Kellie A. Voyich, Anderson & Voyich, Livingston, Montana

Submitted on Briefs:  December 4, 2003

Decided:  February 5, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     William Shannon and Florence Shannon were married.  Florence Shannon petitioned for a legal separation to which William did not respond. After entry of default, William moved the court to set aside his default.  William now appeals the court's denial of that motion.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Florence Shannon petitioned the District Court for a decree of legal separation from her husband, William Shannon, on September 17, 2002.  Service of process was achieved on William on September 27, 2002, when William brought a signed and notarized receipt of the petition and proposed parenting plan to the office of Florence's attorneys.  On October 22, 2002, Florence moved the Clerk of District Court for an entry of default, which the Clerk entered on October 23, 2002.  The parenting plan, findings of fact and conclusions of law and decree of legal separation were entered on April 2, 2003.  On April 21, 2003, Florence petitioned the court to withhold William's income for child support.  On April 22, the court ordered William's employer to withhold $338.00 a month from William's paycheck for child support.  Three days later, William moved the court to set aside the default.  The court denied William's motion to set aside the default, and he now appeals that decision.

## DISCUSSION

¶3     The sole issue raised on appeal is whether the District Court abused its discretion when it denied William's request to set aside the default judgment.

2

¶4 On review of a district court's denial of a motion to set aside a default judgment, the finding of even a slight abuse of discretion is sufficient to reverse the order. *In re Marriage of Winckler,* 2000 MT 116, ¶ 10, 299 Mont. 428, ¶ 10, 2 P.3d 229, ¶ 10. We consistently recognize that (1) default judgments are not favored and every litigated case should be tried on its merits; and (2) trial courts have a certain amount of discretion when deciding whether or not to set aside a default judgment. *Empire Lath & Plaster v. American Cas.* (1993), 256 Mont. 413, 416, 847 P.2d 276, 278.

¶5 Rule 55(c), M.R.Civ.P., allows for the setting aside of a default judgment:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

¶6 Rule 60(b), M.R.Civ.P., states in its pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment.

¶7 When considering a motion to set aside the entry of a default judgment, the court must determine whether the moving party first satisfied the criteria for establishing good cause under Rule 55(c). *In re Marriage of McDonald* (1993), 261 Mont. 466, 469, 863 P.2d 401, 403. There are four criteria a party must meet to "show good cause" under the first part of Rule 55(c): (1) the defaulting party proceeded with diligence; (2) the defaulting party's neglect was excusable; (3) the defaulting party has a meritorious defense to the claim; and

3

(4) the judgment, if permitted to stand, will affect the defaulting party injuriously. *McDonald,* 261 Mont. at 468, 863 P.2d at 402.

¶8 William places considerable reliance on our decision of *In re Marriage of Winckler*, 2000 MT 116, 299 Mont. 428, 2 P.3d 229, where we set aside a default judgment. Although the present case has similarities to *Winckler*, it differs sufficiently as to each of the good cause factors.

¶9 Under the first criterion of diligence, we have looked to the conduct of the parties both prior to and after the default. In *Winckler,* the defaulting party was diligent when he obtained counsel and filed motions for relief from default within one week of receiving the notice of default judgment, which also met the criterion of filing within sixty days of entry of judgment pursuant to Rule 60(b), M.R.Civ.P. *Winckler,* ¶ 18. In *Blume v. Metropolitan Life Ins. Co.* (1990), 242 Mont. 465, 467, 791 P.2d 784, 786, the evidence showed that Metropolitan had received the complaint and summons via certified mail, but despite procedures to handle such mail, it was never directed to a person in authority. Also, within one week of discovering the default, Metropolitan had hired a Billings firm and filed a motion to set aside the default, which was sufficient diligence. *Blume*, 242 Mont. at 469, 791 P.2d at 787. In *Waldher v. FDIC*, the defaulting party acted diligently when both parties were actively engaged in on-going settlement negotiations which continued after the default was taken. *Waldher v. FDIC* (1997), 282 Mont. 59, 935 P.2d 1101. But, in *Empire Lath & Plaster*, filing a motion to set aside one week after the default was insufficient where the

defaulting party was aware of the dispute and had actual notice of the filed complaint, yet took no action. *Empire Lath & Plaster,* 256 Mont. at 413, 847 P.2d at 276.

¶10    In the present case, William was not served with a notice of default judgment. Accordingly, William claims he thought he and Florence were only getting a legal separation, not a dissolution with a final division of property.  He continued to go to counseling with Florence and their son, Johnathan, and thought they were working things out with the possibility of reconciliation.  William was unaware of the status of the case until he received in the mail the court's findings of fact, conclusions of law, and final decree around April 8, 2003.  William filed his motion to set aside the default on April 25, seventeen days later.

¶11    In regard to the second criterion of excusable neglect, in *Winckler* we noted that the defaulting party had relied on language in a letter from his spouse's attorney, which accompanied the paperwork.  That letter made references to a possible negotiated settlement, which led the defaulting husband to believe he would receive a settlement offer before he needed to respond. *Winckler,* ¶ 20.  The letter William received from Florence's attorney differs significantly from the letter in *Winckler*.  The letter directed to William made no reference to a possible settlement and directly stated, "By signing the Acknowledgment you are indicating you received the enclosed documents and realize that you have 20 days, from signing the Acknowledgment, in which to file a response with the court on your own behalf. If a response is not filed, a default judgment may be taken against you."  The acknowledgment form that William signed and notarized also contained specific language indicating a failure to respond within the twenty-day period would result in a default judgment.

¶12     Under the third criterion of having a meritorious claim, we only look to whether or not the defaulting party has an actual defense. In *Waldher,* we stated that it was not necessary to discuss the merits of the answer, but that the defendant need merely establish a *prima facie* defense. *Waldher,* 282 Mont. at 63, 935 P.2d at 1104. In the present case, William asserts that he and Florence entered a prenuptial agreement in France prior to getting married. Florence counters that the agreement was made pursuant to French civil law and therefore would not be enforceable here. However, we do not need to address the merits of the defense. All that is necessary is that William establish that he has an actual defense.

¶13     Under the fourth criterion, the party must show that he will be injuriously affected if the default is allowed to remain. In *Winckler*, $70,000 of marital debt had been allocated to the defaulting party and only $4,000 to the former wife. *Winckler*, ¶ 21. In *Waldher*, the default would clearly have injuriously affected FDIC by depriving it of the ability to assert its interest in the real property. *Waldher,* 282 Mont. at 63, 935 P.2d at 1104.

¶14     In the present case, although William asserts that it is "obvious" that if this judgment is allowed to stand it will injuriously affect him, our review of the court's final order reveals no apparent inequities. Nor does William assert that the court improperly applied the Montana Child Support Guidelines. Although William feels that the court's final order is not fair, he has failed to show good cause to set aside the entry of default judgment.

¶15     Because William has failed to establish the prerequisite good cause under Rule 55(c), we need not address Rule 60(b). We hold that the District Court did not abuse its discretion

when it refused to grant the motion to set aside the default judgment entered against William.

Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JOHN WARNER