No. 04-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 278

ESSEX INSURANCE COMPANY,

       Plaintiff and Respondent,

  v.

JAYCIE, INC., d/b/a GOLD BAR TAVERN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                In and For the County of Deer Lodge, Cause No. DV 2003-113,
                Honorable Ted L. Mizner, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Tammy Wyatt-Shaw and Travis B. Dye, Phillips & Bohyer, P.C.,
              Missoula, Montana

       For Respondent:

              Christopher C. Voigt, Crowley, Haughey, Hanson, Toole & Dietrich,
              P.L.L.P., Billings, Montana

                    Submitted on Briefs:  August 4, 2004

                             Decided:  October 6, 2004

Filed:

_____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Essex Insurance Company (Essex) filed a declaratory action against Jaycie, Inc. (Jaycie). After serving the complaint and summons on Jaycie and not receiving an answer within twenty days, Essex had the clerk enter Jaycie's default. Shortly thereafter, Essex moved the District Court for a default judgment. Before the District Court ruled on Essex's request for a default judgment, Jaycie appeared with counsel and moved to have the entry of default set aside. The District Court found Jaycie's neglect was inexcusable and denied Jaycie's motion to set aside the entry of default. The District Court then entered default judgment against Jaycie. Jaycie now appeals the District Court's denial of its request to set aside the entry of default. We affirm.

## FACTS[1]

¶2 This suit arises out of activities at the Gold Bar Tavern in Anaconda. One night at the tavern, a former Montana State Prison (MSP) inmate encountered an MSP guard. The former inmate attacked the guard and beat him severely. The staff of the tavern hauled the guard outside and propped him up on a bar stool resting against the wall of the tavern, leaving him to further fend for himself. On his own, unattended, in a less than coherent state, the guard fell off the bar stool and was further injured. The guard filed suit against the Gold Bar Tavern and Jaycie, the tavern's corporate owner. The suit was founded on a theory of

_____

[1]For the purposes of this appeal only, we recite the facts as alleged in the briefs and pleadings.

2

negligence with alleged violations of the Dram Shop Act, § 27-1-710, MCA, for serving alcohol to obviously intoxicated patrons and for failure to care for those intoxicated patrons.

¶3    Jaycie has an insurance policy with Essex. After investigating the guard's claim against Jaycie, Essex determined that the claim was not covered because its policy excludes coverage for assault and battery as well as for events stemming from "liquor liability" and complaints of failing to assume responsibility for the well being of any person. In a letter sent on June 6, 2003, Essex informed Jaycie of its decision that the guard's claim was not covered. In that letter, Essex urged Jaycie to obtain its own counsel and to pursue the matter with its other insurance providers. On July 14, 2003, Essex filed a declaratory action in which it sought a declaration of rights and duties pursuant to Jaycie's policy with Essex.

¶4    On August 7, Jaycie's sole shareholder, Jackie Johnson, was personally served at her residence with the summons and complaint. On the same date, Robert C. Johnson, the manager of the Gold Bar Tavern was also served with a summons and complaint at the bar. Neither Jackie Johnson nor Robert C. Johnson filed an answer within the twenty-day period as required by Rule 12(a), M.R.Civ.P. On September 5, Essex's counsel sent letters to Jackie Johnson and to Robert C. Johnson, stating that Essex would not file a default if Jaycie planned on appearing in the action. During this time, Essex's counsel had several conversations with Jackie Johnson's personal counsel, in which Essex's counsel explained the situation and asked that a representative of Jaycie please respond to the complaint. On September 17, an anonymous woman called Essex's counsel and gave him the phone number for a Mr. Goldberg, Jaycie's insurance agent. Essex's counsel then called both Mr. Goldberg

and Jackie Johnson's personal counsel, asking each of them to talk with Jackie Johnson and please have her respond. Essex's counsel then sent Jackie Johnson a letter stating that if she did not inform him of her intention to respond by September 30, he would seek a default. On or about September 25, Jackie Johnson finally contacted Essex's counsel and stated that she would contact him by the following Monday, September 29, and inform him whether or not she would appear. Essex's counsel never heard back from Jackie Johnson.

¶5 Essex then applied for an entry of default, which the clerk entered on October 2, 2003. Essex had the clerk provide a copy of the entry of default to Jackie Johnson. On October 14, Essex submitted a motion for default judgment. However, before the District Court ruled on Essex's motion, Jaycie appeared with counsel, seeking to have the entry of default set aside.

¶6 Rule 55(c), M.R.Civ.P., allows a district court to set aside an entry of default for good cause shown. Jaycie argued that according to the standard announced in *Cribb v. Matlock Communications, Inc.* (1989), 236 Mont. 27, 768 P.2d 337, a default should be set aside if the default was not willful. Jaycie argued that Jackie Johnson was confused about the import of the numerous legal documents she was receiving in the underlying suit and was unaware that her insurance provider, Essex, had filed a second suit against her. She claimed that she was not sure if she ever received Essex's summons and complaint. She thought the documents she received were merely correspondence from her insurer detailing the progress of the underlying suit. As soon as she realized she was dealing with a second lawsuit, she immediately obtained counsel.

4

¶7 Essex responded that in order to meet the "good cause shown" standard of Rule 55(c), M.R.Civ.P., a party would have to demonstrate excusable neglect, as set forth in *Blume v. Metropolitan Life Ins. Co.* (1990), 242 Mont. 465, 791 P.2d 784. The District Court concluded that Jackie Johnson had been provided more than ample opportunity to respond to the complaint, and her failure to make an appearance within fifty days after being served was inexcusable. Jaycie's request to set aside the entry of default was thus denied, and the default judgment was entered.

¶8 On appeal, Jaycie argues that the correct standard to apply is set forth in *Cribb* and that the District Court erroneously applied the higher "excusable neglect" standard of *Blume*, which is only appropriate for setting aside a default judgment. Essex responds that the *Cribb* standard has not been used in some time, and that the appropriate standard to use is *Blume*. We take this opportunity to address the confusion as to the appropriate standard.

## DISCUSSION

¶9 When a party to a suit fails to respond or to make any appearance, the Rules of Civil Procedure allow the prosecuting party to seek a default. The Rule states:

> **Rule 55(c). Default–setting aside–extension of time by court or stipulation of parties.** For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b). No default of any party shall be entered, and no default judgment shall be entered against any party, except upon application of the opposing party. Any stipulation for extension of time between the parties or their counsel, whether in writing or made verbally before the court, shall be effective to extend the time for serving and/or filing any appearance, motion, pleading or proceeding, according to the terms of such stipulation. In any case if a party in default shall serve and file an appearance, motion, pleading or proceeding prior to application to the clerk for

default, then such defaulting party shall not thereafter be considered in default as to that particular appearance, motion, pleading, or proceeding.

¶10 In *Cribb,* 236 Mont. at 30, 768 P.2d at 339, we recognized that an entry of default is merely an interlocutory order that in itself determines no rights or remedies, whereas a default judgment is a final judgment that terminates the litigation and decides the dispute. Thus, in *Cribb*, we held that to evaluate a showing of good cause, courts should consider:

(1) whether the default was willful, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant has presented a meritorious defense to plaintiff's claim. The court must also balance the interests of the defendant in the adjudication of his defense on the merits, against the interests of the public and the court in the orderly and timely administration of justice.

*Cribb*, 236 Mont. at 30, 768 P.2d at 339 (citing 6 J. Moore, *Moore's Federal Practice*, ¶ 55.10[2], at 55-50 (2d ed. 1988)). Also in *Cribb*, we recognized that the "good cause" standard for setting aside an entry of default is more flexible and lenient than the Rule 60(b) standard for setting aside a default judgment.

¶11 Although we have continued to cite to *Cribb* for its three-part good cause shown standard, *see, e.g.*, *In re Marriage of Whiting* (1993), 259 Mont. 180, 185, 854 P.2d 343, 346; *Fronk v. Wilson* (1991), 250 Mont. 291, 295, 819 P.2d 1275, 1278; and *Hoyt v. Eklund* (1991), 249 Mont. 307, 311-12, 815 P.2d 1140, 1142-43, and we cite to *Cribb* for the proposition that a higher showing is required to set aside a default judgment than is required to set aside an entry of default, *see, e.g.*, *Sun Mountain Sports, Inc. v. Gore*, 2004 MT 56, ¶ 14, 320 Mont. 196, ¶ 14, 85 P.3d 1286, ¶ 14; *In re Marriage of Winckler*, 2000 MT 116, ¶ 17, 299 Mont. 428, ¶ 17, 2 P.3d 229, ¶ 17, we have also cited to a four-part *Blume* test for

the good cause shown of Rule 55(c), M.R.Civ.P.  *See, e.g.*, *Sun Mountain Sports*, *Inc.*, ¶¶ 12-14; *In re Marriage of Shannon*, 2004 MT 25, ¶ 9, 319 Mont. 357, ¶ 9, 84 P.3d 645, ¶ 9; *Waldher v. FDIC* (1997), 282 Mont. 59, 62, 935 P.2d 1101, 1103; *In re Marriage of Martin* (1994), 265 Mont. 95, 99, 874 P.2d 1219, 1222.  Most recently in *Sun Mountain Sports, Inc.* we restated the *Blume* four-part test as follows:

> (1) the defaulting party proceeded with diligence; (2) the defaulting party's neglect was excusable; (3) the defaulting party has a meritorious defense to the claim; and (4) the judgment, if permitted to stand, will affect the defaulting party injuriously.

*Sun Mountain Sports, Inc.*, ¶ 12.  Essex claims that while *Cribb* has never been overruled, the *Blume* standard is the more recent standard which has been applied most frequently, and thus, *Blume* is the controlling authority.  Jaycie retorts that *Blume* has only been used when the court is considering setting aside both the entry of default and the default judgment.

¶12     Since our recent cases have cited the *Blume* standard for measuring the showing of good cause to set aside an entry of default, *Sun Mountain Sports, Inc.*; *Marriage of Shannon; Marriage of Winckler*; *State ex rel. Dep't of Envtl. Quality v. Robinson*, 1998 MT 185, 290 Mont. 137, 962 P.2d 1212; and *Waldher*, as well as a showing of excusable neglect needed to set aside a default judgment, we take this opportunity to clarify which standard applies to which situation.  When the issue is the setting aside of a default judgment under Rule 60(b)(1), M.R.Civ.P. (either alone or in conjunction with an entry of default), the appropriate standard is that set forth in *Blume*.  When the issue is the setting aside of an entry of default under Rule 55(c), M.R.Civ.P., as opposed to a default judgment, the appropriate standard is *Cribb*, which we now apply.

¶13    Under the first *Cribb* factor, Jaycie failed to show that its default was not willful. Here, Essex established that Jaycie was appropriately served with a complaint and summons. Essex refrained from taking the entry of default until after it did everything in its power to determine whether or not Jaycie would respond. Once Essex finally heard from Jaycie, it waited until after the agreed time to respond had expired before it requested the entry of default. In response, Jaycie asserts that Jackie Johnson ignored the summons and complaint and the repeated attempts of Essex to find out whether or not she was going to respond due to her mistaken belief that the communications concerned the underlying court case, which was being "taken care of" by Jaycie's insurance providers. However, a party cannot profess ignorance in the face of repeated warnings that the insurer is denying coverage and that, if no answer is filed, a default will be taken. Whether or not Jackie Johnson's ignorance of the existence of the second suit was genuine or not, it was the product of her own unfounded belief that the underlying suit was covered. Notably, Jackie Johnson ultimately admitted that Jaycie's other insurance providers also denied the claim. Thus, Jaycie failed to establish its default was not willful.

¶14    The *Cribb* standard also compels us to consider the prejudice to the plaintiff and whether or not the defendant had a meritorious defense. This standard does not require a defendant to establish an ultimate likelihood of success on the merits. Rather, the party seeking to set aside the default must set forth the prima facie elements, which, if proven, would supply a defense. Here, Jaycie merely asserts that the duty to defend is broader than the duty to indemnify and that policy exclusions are to be narrowly construed against the

8

insurer. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 22, 321 Mont. 99, ¶ 22, 90 P.3d 381, ¶ 22.

¶15 Even though Jaycie has finally asserted its defense theory, Essex had a right to be appraised of Jaycie's defense in a timely manner. By prosecuting a declaratory action, Essex sought to hear any arguments Jaycie had which would require Essex to defend the underlying suit. Essex had an incentive to resolve such questions in a timely fashion. Essex would certainly be prejudiced if the default were set aside and it was held to have had a duty to defend a suit which has now surely progressed beyond the initial stages of litigation. Had Jaycie been earnest in its desire to contest Essex's duty to defend, then Jaycie should have raised such claims in a timely fashion rather than ignore Essex's repeated attempts to elicit a responsive pleading.

¶16 Jaycie has successfully argued that the correct standard to set aside an entry of default is the *Cribb* standard. However, Jaycie has failed to show good cause to set aside the entry of default under that standard. While the District Court was not clear which standard it used to evaluate whether or not to set aside Jaycie's default, we will nonetheless affirm a district court's order if it reaches the correct result for the wrong reason. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 40, 306 Mont. 321, ¶ 40, 34 P.3d 87, ¶ 40. The order of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

9

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
Justice John Warner concurring and dissenting.

¶17    I concur in affirming the District Court but I dissent from this Court's decision to continue to use two separate standards; one to determine whether to set aside a default and another to set aside a default judgment. I would abandon the *Cribb v. Matlock* standard and simply use that announced in *Blume v. Metropolitan Life Ins. Co.* in both instances.

¶18    The decision today, while attempting to clarify the law, will only continue the confusion for no reason of substance. I can see no purpose in perpetuating the distinction between setting aside a default and setting aside a default judgment. In my opinion it is counter productive.

¶19    Rule 55(a), M.R.Civ.P., does indeed make it a ministerial act for the Clerk of Court to enter a default when the defaulted party has not appeared. Rule 55(b), M.R.Civ.P., provides that it is a ministerial act for the court to enter a default judgment when a party has not appeared unless it is necessary to take evidence on some issue. Such is not the case here. Jaycie did not appear and thus Essex was entitled to judgment. No discretion would have been involved. In effect, the entry of a default judgment would have been a ministerial act.

¶20    The only real difference between the *Cribb* and the *Blume* standards is that the former asks whether the defaulted party acted willfully, and the latter asks whether the defaulted party proceeded with diligence and whether its failure to appear was excusable. Under *Cribb*

11

the defaulted party must only show it did not purposely decide to allow the default be entered. This is the same as saying: "Gosh Judge, I know I'm late and I don't have any excuse, but I really didn't mean to not appear like I was told I had to." In my view, this is not sufficient to set aside a formal default. It is especially true under the present circumstances where Jaycie was told that it would be defaulted if it did not appear.

¶21 Under the *Blume* standard the defaulted party must at least act with some degree of diligence and offer some excuse for its neglect, i.e., it must offer some reasonable explanation for not appearing. This is not too much to ask. In fact, in this case Jaycie does make its excuse, albeit not a good one.

¶22 In reviewing default judgments we have consistently held that cases should be decided on their merits, judgments by default are not favored, and only a slight abuse of discretion need be shown to warrant reversal on appeal. *Sun Mountain Sports v. Gore*, 2004 MT 56, ¶ 10, 320 Mont. 196, ¶ 10, 85 P.3d 1286, ¶ 10. These protections for a defaulted party are more than sufficient. There is no need for the double standard revived by today's decision.

¶23 As the Court states at ¶ 12, the *Blume* standard has often been used by this Court when considering whether to set aside a default. I would opt for the beauty of simplicity where there is no need for complication. When there is no need for two standards – one is better. The *Cribb* standard should be allowed to lie in peace where it has already been buried.

/S/ JOHN WARNER

12

Justice Jim Regnier concurring and dissenting.

¶24    I concur in the Court's legal analysis and its decision to clearly pronounce that different standards apply depending on whether a court is considering a motion to set aside a default rather than a default judgment.  In my view, the Court correctly retained the "good cause" standard recognized in our *Cribb* decision for setting aside a default.  Further, I believe the Court also correctly recognized that a higher showing is required to set aside a default judgment.  Our decision in *Blume* recognizes this more stringent "excusable neglect" standard.

¶25    The District Court erroneously applied the more stringent "excusable neglect" standard when it refused to set aside the default.  Since the District Court used the wrong standard, I believe the more appropriate resolution is to remand this matter to the District Court for a new hearing and its determination of whether this default should be set aside under the correct *Cribb* standard.

/S/ JIM REGNIER

13

Justice Jim Rice specially concurring.

¶26 I concur in affirming the District Court, but dissent from the Court's holding on the standard to be employed in default cases.

¶27 Without saying why, the Court chooses to resurrect the *Cribb* standard after abandoning it for many years. It must be noted that the Court has cited the 1989 *Cribb* decision for Rule 55 good cause purposes only twice, the last occurring thirteen years ago. In contrast, the 1990 *Blume* decision has since become this Court's gold standard on the default issue, having applied it numerous times in deciding default cases, particularly in recent years. In essence, the Court today overrules, or, at a minimum, calls into question, this long line of recent cases which were decided based upon *Blume*. It is both unnecessary and unwise to do so.

¶28 If the Court's opinion can be read as desiring to preserve the distinction between the lesser burden to set aside a default, and the greater burden to set aside a default judgment, it is unnecessary to bring *Cribb* back from the grave to do so. These differing burdens are already preserved within the *Blume* standard, in which we apply Rule 55's good cause requirement for setting aside a default "more flexibly and leniently" than the excusable neglect standard under "the more stringent Rule 60(b)" for setting aside a default judgment. *Sun Mountain Sports, Inc. v. Gore*, 2004 MT 56, ¶ 14, 320 Mont. 196, ¶ 14, 85 P.3d 1286, ¶ 14. In reaffirming *Cribb*, but also maintaining *Blume*, we have endorsed multiple standards and ensured confusion in the law.

¶29     Further, I concur with Justice Warner's observation that allowing a defaulting party to establish merely that its conduct was not "willful"–the hallmark of the *Cribb* standard–in order to satisfy the good cause requirement under Rule 55 and thereby set aside its default, is simply bad policy which does not encourage compliance with the judicial process.


/S/ JIM RICE