No. 02-640

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 56

SUN MOUNTAIN SPORTS, INC.,

      Plaintiff and Respondent,

   v.

PAULA L. GORE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV 2002-258,
                 Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nikolaos G. Geranios, Dye & Moe, P.L.L.P., Missoula, Montana

      For Respondent:

          Cory R. Laird, Boone Karlberg, P.C., Missoula, Montana

Submitted on Briefs:  January 30, 2003

Decided:  March 9, 2004

Filed:

_____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Paula L. Gore (Gore) appeals the denial of her motion to set aside a default and default judgment entered against her, and in favor of Sun Mountain Sports, Inc. (Sun Mountain), by the Fourth Judicial District Court, Missoula County. We conclude that her motion was improperly denied and reverse.

¶2 The sole issue presented is whether the District Court abused its discretion when it denied Gore's motion to set aside the default and default judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The crux of this dispute is Sun Mountain's claim that Gore is liable for the cost of merchandise which Sun Mountain, a Montana corporation, sold and delivered to Golf Emporium Superstore, Inc., in San Antonio, Texas. The basis of Sun Mountain's claim is a Personal Guaranty executed by Gore on November 15, 1996, as Secretary Treasurer for Ocean Club, Inc., d/b/a Golf Emporium. Gore, a resident of Texas, contends the Personal Guaranty which she executed was for Ocean Club, Inc., only, a Texas corporation which ceased doing business in 1997, and that she did not sign a Personal Guaranty on behalf of Golf Emporium Superstore, Inc., and is not responsible for the debts of that entity.

¶4 On March 18, 2002, Sun Mountain filed an action against Gore in the Fourth Judicial District Court to recover by way of the Personal Guaranty she had executed, and caused a summons to be issued which was personally served upon Gore in Bexar County, Texas, on March 22, 2002. Gore retained Texas counsel to initiate a Texas action against Sun Mountain regarding the claimed debt, but she answered the Montana action *pro se*. On Sun

2

Mountain's motion, the Bexar County Court entered an order abating Gore's Texas action pending disposition of the Montana proceeding.

¶5     Upon being served with the Montana summons and complaint, Gore, on or about April 8, 2002, submitted via certified mail to the Missoula County Clerk of Court, an answer and special appearance which denied the allegations of indebtedness to Sun Mountain and asserted that the District Court lacked personal jurisdiction over her as defendant. Gore also served via certified mail a copy of the answer upon Sun Mountain's counsel in Missoula. The clerk of court may have initially filed Gore's answer but later returned it to Gore with a note stating that Gore failed to include the required filing fee. In an affidavit, Gore stated she received the returned answer on April 17, 2002.

¶6     On April 12, 2002, after Gore's appearance deadline expired, Sun Mountain, without notice to Gore, applied for entry of default pursuant to Rule 55(a), M.R.Civ.P. On April 16, 2002, the District Court entered default against Gore. The following day, April 17, 2002, Sun Mountain requested a hearing and entry of default judgment against Gore. Also on that day, Gore received her returned answer and called the clerk of court to inquire why her documents had been returned. She then learned that the default had been entered against her the previous day. On April 25, 2002, the District Court held the hearing requested by Sun Mountain and entered default judgment against Gore in the amount of $21,628.28, which consisted of principal, accrued interest, attorney fees, costs, and expenses.

¶7     Upon learning of the default, Gore immediately hired Montana counsel who, on June 13, 2002, within the sixty-day period required by Rule 60(b), M.R.Civ.P., and pursuant to

3

Rules 55(c), 60(b), and 12(b), M.R.Civ.P., moved to set aside the default, vacate the default judgment, and dismiss the case for lack of personal jurisdiction.

¶8 The District Court failed to rule on the motion within sixty days, and it was deemed denied by operation of Rule 60(c), M.R.Civ.P. On August 22, 2002, the District Court held a hearing on Gore's motions to set aside the default, vacate the default judgment, and dismiss the case. At the hearing, Gore's counsel stated he believed the District Court had lost jurisdiction on the matter pursuant to Rule 60(c), and the court agreed. The District Court stated that, upon appeal, the question before this Court would be whether or not the default is valid.

¶9 On August 30, 2002, Gore filed a notice of appeal with this Court, appealing from the deemed denial of her motion to set aside the default and vacate the default judgment.

## STANDARD OF REVIEW

¶10 In reviewing a default judgment, we are guided by the principle that every litigated case should be decided on its merits; judgments by default are not favored. *In re Marriage of Whiting* (1993), 259 Mont. 180, 186, 854 P.2d 343, 347. When appeal is from a denial of a motion to set aside a default judgment, our standard of review is that only a slight abuse of discretion need be shown to warrant reversal. *Lords v. Newman* (1984), 212 Mont. 359, 364, 688 P.2d 290, 293; *Blume v. Metropolitan Life Ins. Co.* (1990), 242 Mont. 465, 467, 791 P.2d 784, 786. The party seeking to set aside a default judgment has the burden of proof. *In re Marriage of Winckler*, 2000 MT 116, ¶ 10, 299 Mont. 428, ¶ 10, 2 P.3d 229, ¶ 10.

4

## DISCUSSION

**¶11** *Did the District Court abuse its discretion when it denied Gore's motion to set aside the default and default judgment?*

**¶12** Pursuant to Rule 55(c), M.R.Civ.P., a default may be set aside for "good cause":

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

In *Blume*, this Court clarified the criteria which must be satisfied by a defaulting party to establish good cause, and we have restated the criteria as follows:

> (1) the defaulting party proceeded with diligence; (2) the defaulting party's neglect was excusable; (3) the defaulting party has a meritorious defense to the claim; and (4) the judgment, if permitted to stand, will affect the defaulting party injuriously.

*Winckler*, ¶ 15 (citing *Blume*); *see also In re Marriage of McDonald* (1993), 261 Mont. 466, 468, 863 P.2d 401, 402.

**¶13** Rule 60(b), M.R.Civ.P., provides the following bases for setting aside a judgment:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment.

**¶14** The moving party must first satisfy the Rule 55(c), M.R.Civ.P., criteria for good cause, and then satisfy the more stringent Rule 60(b), M.R.Civ.P., criteria: ". . . the 'good cause standard under Rule 55(c), M.R.Civ.P., should be applied more flexibly and leniently than the excusable neglect standard under Rule 60(b), M.R.Civ.P.'"  *Winckler*, ¶ 17 (citing *Blume*, 242 Mont. at 467, 791 P.2d at 786; quoting *Cribb v. Matlock Communications, Inc.* (1989) 236 Mont. 27, 30, 768 P.2d 337, 339).

¶15 Gore contends she has met her burden for setting aside the default and default judgment pursuant to Rules 55(c) and 60(b), M.R.Civ.P. Gore argues (a) that she proceeded with diligence in hiring Montana counsel to file her Rule 60(b), M.R.Civ.P., motion within the sixty-day period as required by the rule; (b) that her neglect was excusable based upon her good faith compliance with the summons, which did not include instructions to remit a $65.00 filing fee; (c) that she has a meritorious defense to Sun Mountain's claim, specifically, that she did not sign the Personal Guaranty for Golf Emporium Superstore, Inc., that the debts made the basis of Sun Mountain's claim were incurred long after Ocean Club, Inc., stopped doing business, and that Sun Mountain has acknowledged in writing that the debts at issue are owed by Golf Emporium Superstore, Inc.; and (d) that the judgment, if permitted to stand, will affect her injuriously since, as she asserts, she does not owe the debt as alleged.

¶16 In response, Sun Mountain asserts Gore's argument that the summons provided no notice of the filing fee is without merit. Sun Mountain states Gore had an obligation to educate herself and abide by the various rules of Montana courts. Further, Sun Mountain argues it is error for the court to exonerate Gore from failure to appear because of her *pro se* status. Sun Mountain analogizes that it had to hire Texas counsel to properly appear and defend in the case filed by Gore in that state, but that Gore initially chose not to hire Montana counsel which would have assured a proper appearance and answer in this action. Finally, Sun Mountain argues that Gore's challenges to the validity of the Personal Guaranty are also without merit. Sun Mountain states that, according to the terms of the Personal

7

Guaranty, in order to terminate her contractual obligations, Gore would have had to have provided prior written notification to Sun Mountain, which Gore did not do.

¶17 Upon receipt of the complaint and summons in Texas, Gore first attempted to file a timely answer to the action. Then, upon learning of the entry of default against her, she immediately hired Montana counsel, who filed a timely motion to vacate the default and the default judgment pursuant to Rules 55(c) and 60(b), M.R.Civ.P., and to dismiss the case for lack of personal jurisdiction pursuant to Rule 12(b), M.R.Civ.P. The matter was fully briefed and set for hearing on August 22, 2002. However, shortly before the hearing, Gore discovered, and the District Court concurred, that the matter had been deemed denied by operation of Rule 60(c), M.R.Civ.P. We conclude that Gore acted with diligence herein.

¶18 The evidence produced by Gore further demonstrates that her failure to appear was not due to inexcusable neglect or disrespect for the court or judicial process. As an out-of-state *pro se* litigant, Gore followed the instructions on the summons and filed her answer and special appearance with the clerk of court and opposing counsel within twenty days. She mistakenly assumed that if she simply followed the instructions provided on the summons, her answer would be filed. She did not know, and the summons did not inform her, that Montana law requires defendants to pay a $65.00 filing fee in order to respond to a complaint. As a result, Gore did not remit the filing fee. By the time Gore found out that she was required to submit a filing fee with her answer, Sun Mountain had already applied for, and received, a default without notice to Gore.

8

¶19　This Court has set aside default judgments on grounds of excusable neglect in cases where *pro se* defendants have either misunderstood communications from the opposing attorney, where opposing counsel took advantage of *pro se* defendants, or where *pro se* defendants made errors that would not typically have been made by counsel.  In *In re Marriage of Broere* (1994), 263 Mont. 207, 867 P.2d 1092, this Court set aside a default judgment in a dissolution action on grounds of excusable neglect when a husband, acting *pro se*, did not understand from the summons that he was to return his answer to District Court.  The summons directed him to file his answer and serve a copy upon his wife's attorney, and he mistakenly believed a telefaxed response to his wife's attorney was sufficient, especially when the wife's attorney subsequently served him with a notice of issue.  *Broere*, 263 Mont. at 210, 867 P.2d at 1094.  *See also Whiting*, 259 Mont. at 186, 854 P.2d at 347, and *Waggoner v. Glacier Colony of Hutterites* (1953), 127 Mont. 140, 148, 258 P.2d 1162, 1166.

¶20　Sun Mountain cites *Lomas & Nettleton Co. v. Wiseley* (7th Cir. 1989), 884 F.2d 965; *In re Marriage of Castor* (1991), 249 Mont. 495, 817 P.2d 665; *Schalk v. Bresnahan* (1960), 138 Mont. 129, 354 P.2d 735*; and Foster Apiaries, Inc. v. Hubbard Apiaries, Inc*. (1981), 193 Mont. 156, 630 P.2d 1213, for the premise that Gore's actions do not constitute excusable neglect.  In *Lomas*, the Seventh Circuit Court of Appeals found no excusable neglect for an *attorney's* failure to attend a foreclosure sale.  *Lomas*, 884 F.2d at 968.  In *Castor*, this Court found no excusable neglect for an *attorney's* forgetfulness in noting the date of a rescheduled hearing.  *Castor*, 249 Mont. at 499, 817 P.2d at 667.  Likewise, in *Schalk*, we found no excusable neglect where the failure to enter an appearance was as a

9

result of an *attorney's* forgetfulness because of other more important business. *Schalk*, 138 Mont. at 132, 354 P.2d at 736. And, in *Foster Apiaries*, we found no excusable neglect where a defendant company's representative indicated he did not know what further action was required to make an appearance, yet the representative was the *corporate president* doing business on a multi-state basis. Moreover, the president had actual notice of the default and waited 147 days before moving to dismiss under Rule 60, M.R.Civ.P. We stated, "[a] failure to appear due to forgetfulness and the press of other, more important business is not sufficient to establish excusable neglect." *Foster Apiaries*, 193 Mont. at 161, 630 P.2d at 1216 (quoting *Morris v. Frank Transportation Co.* (1979), 184 Mont. 74, 76, 601 P.2d 698, 699).

¶21 These cases, which illustrate the premise that "[a] liberal court cannot find excusable neglect where a defendant has willingly slumbered on his rights and ignored the judicial machinery established by law," *Morris*, 184 Mont. at 76, 601 P.2d at 699, stand in stark contrast to Gore's efforts, as *pro se* litigant, in answering Sun Mountain's complaint and summons. Here, as in *Broere*, *Whiting*, and *Waggoner*, Gore's evidence indicates her default was not willful. We further conclude that Gore's actions constituted excusable neglect.

¶22 Gore has also established a meritorious defense. Initially, we note that Gore "does not have to demonstrate the truth of the allegation of the answer, and it is not appropriate to discuss the merits of the answer beyond finding a prima facie defense." *Blume*, 242 Mont. at 470, 791 P.2d at 787.

10

¶23  Gore asserts the Personal Guaranty in question was executed in 1996 for a Texas corporation, Ocean Club, Inc., which ceased doing business in 1997. Golf Emporium Superstore, Inc., a new entity which was incorporated in 1996, occupied the former location of Ocean Club, Inc., and began doing business with Sun Mountain in January 1997. Gore contends Ocean Club, Inc., ordered no merchandise from Sun Mountain since January 1997. According to Gore, the damages alleged in Sun Mountain's complaint are for goods sold and delivered by Sun Mountain to Golf Emporium Superstore, Inc., between April 27, 2001, and October 29, 2001.

¶24  Further, Gore asserts that Sun Mountain has received payments paid by check from Golf Emporium Superstore, Inc., in response to invoices it sent over the past five years, that Sun Mountain was advised of the creation of Golf Emporium Superstore, Inc., and that Ocean Club, Inc., was defunct. Significantly, Gore also alleges that Sun Mountain has acknowledged in writing that the debts at issue are owed by Golf Emporium Superstore, Inc.

¶25  Regarding the final criterion, the evidence produced by Gore further indicates that, if the default judgment is permitted to stand, she will be injuriously affected because the default judgment orders her to pay $21,628.28 to Sun Mountain, even though she denies responsibility for the debt.

¶26  Concluding that Gore has satisfied all of the criteria of the "good cause shown" requirement of Rule 55(c), M.R.Civ.P., we turn our inquiry to the "mistake, inadvertence, surprise, or excusable neglect" requirement of Rule 60(b), M.R.Civ.P. *Winckler*, ¶ 22. In *Broere*, we defined a "mistake" under this Rule as "some unintentional act, omission, or

11

error arising from ignorance, surprise, imposition, or misplaced confidence." *Broere*, 263 Mont. at 209, 867 P.2d at 1094 (quoting Black's Law Dictionary 1152 (4ᵗʰ ed. rev. 1975)). In *Broere*, the default entered against the husband in a marital dissolution action was set aside because the husband, appearing *pro se*, was ignorant of the legal process and defaulted based upon his mistaken assumption that his faxed response to his wife's attorney constituted filing. *Broere*, 264 Mont. at 209, 867 P.2d at 1094. Here, Gore, also a *pro se* litigant, unintentionally defaulted through lack of payment of the filing fee despite demonstrating her intent to appear and defend by serving her answer via certified mail upon the clerk of court and Sun Mountain's counsel. Thus, Gore, like the defendant in *Broere*, meets the Rule 60(b), M.R.Civ.P., criteria for "mistake."

¶27 Sun Mountain argues that this Court has specifically refused to overturn a default judgment based on "the identical 'excusable neglect' Gore alleges here," citing *Johnson v. Murray* (1982), 201 Mont. 495, 656 P.2d 170. However, we are not persuaded by this comparison. It is correct that, in *Johnson*, a *pro se* litigant sought to have a default judgment set aside on grounds that his failure to pay a required filing fee was an inadvertent mistake, that he received no bill from the clerk of court for the fee, and that his *pro se* status afforded him more leeway in complying with procedural rules. However, this Court upheld the trial court's refusal to set aside the default judgment because of the egregious conduct of the *pro se* litigant. The trial court denied the motion to set aside on grounds not present here:

> . . . [that the litigant had] fail[ed] to pay the filing fee until 2 ½ months later and after the request to enter his default had been submitted; that he had failed to present a prima facie meritorious defense in the answer and that the evidence indicated overwhelmingly that he had no defense to the actions for

12

libel and slander of title. Although [the litigant was acting *pro se*], the District Court found that his reckless disregard for the rights and feelings of the plaintiffs and his further attempt at that stage to prolong the litigation were adequate reasons to deny his motion to set aside the judgment.

*Johnson*, 201 Mont. at 504-05, 656 P.2d at 175.

¶28    Sun Mountain cites *Greenup v. Russell*, 2000 MT 154, 300 Mont. 136, 3 P.3d 124, for the proposition that while arguably *pro se* litigants should be given more latitude in regard to procedural oversights, "that latitude cannot be so wide as to prejudice the other party, and it is reasonable to expect all litigants, including those acting *pro se*, to adhere to procedural rules." *Greenup*, ¶ 15. Although we continue to endorse this principle, it is not dispositive here. In *Greenup*, we refused to set aside a default judgment entered against a *pro se* litigant who had waited a year and a half after entry to have the default judgment set aside. *Greenup*, ¶ 12. Gore has caused no prejudice to Sun Mountain by any such delay.

¶29    "[C]ases are to be tried on the merits and judgments by default are not favored." *Maulding v. Hardman* (1993), 257 Mont. 18, 23, 847 P.2d 292, 296. If doubt exists concerning whether a default should be set aside, the doubt should be resolved in favor of the motion to set it aside. *Twenty-Seventh Street, Inc. v. Johnson* (1986), 220 Mont. 469, 471, 716 P.2d 210, 211. For nearly a century, this Court has noted the liberality with which default judgments should be set aside:

> The provisions of this [civil procedure] section are exceedingly liberal in their terms, remedial in their character, and were evidently designed to afford parties a simple, speedy, and efficient relief in a most worthy class of cases. The power thus conferred upon courts to relieve parties from judgments taken against them by reason of their mistake, inadvertence, surprise, or excusable neglect should be exercised by them in the same liberal spirit in which the section was designed, in furtherance of justice and in order that cases may be

13

tried and disposed of upon their merits. When therefore, a party makes a showing of such mistake, inadvertence, surprise, or excusable neglect, applies promptly for relief after he has notice of the judgment, shows by his affidavit of merits that prima facie he has a defense, and that he makes the application in good faith, a court could not hesitate to set aside the default, and allow him to serve an answer upon such terms as may be just under all the circumstances of the case.

*Greene v. Montana Brewing Co.* (1905), 32 Mont. 102, 109, 79 P. 693, 695 (quoting

*Griswold Linseed Oil Co. v. Lee* (1891), 1 S.D. 531, 47 N.W. 955, 957).

¶30    Because Gore has met her burden in satisfying the requirements of Rules 55(c) and

60(b), M.R.Civ.P., and because our policy is to favor resolution on the merits, we conclude

that the District Court's refusal, by operation of law, to set aside the default judgment

entered against Gore constitutes, at a minimum, a slight abuse of discretion. Therefore, we

reverse the entry of the default and default judgment, and remand for further proceedings

consistent with this opinion.


                                                    /S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART