OPINION
McKEOWN, Circuit Judge:
Imagine this scenario:
An out-of-state insurance company is contemplating doing business in Montana. Preliminary to any authorization to sell policies or the transaction of any business, state law requires the company to appoint the Commissioner of Insurance for service of process, which it did. Although the company began the licensure application process, the company cannot yet sell policies in Montana and has not completed the regulatory process to do so. The company has no contacts or contracts, no sales agents or producers, no employees, and no offices in Montana, nor has it filed insurance rates and other forms necessary to do business, solicited any business, advertised, sold any policies, collected any premiums, or transacted any business in Montana. The company is, in short, 99.99% “Montana free.” Although it has done nothing more than dip its toe in the water to test the idea and preserve its option of doing business in Montana at some undetermined point in the future, the company now faces the prospect of being subject to general jurisdiction.
We hold that this toe — the mere appointment of an agent for service of process — does not subject the company to general personal jurisdiction in Montana. Numerous Supreme Court opinions and Montana law counsel that such testing of the waters does not constitute a generalized consent to be sued in Montana. Nor is the appointment of an agent for service of process sufficient to confer either general or specific personal jurisdiction over the company under our controlling standards. The constitutional standard of “minimum contacts” has practical meaning in the context of personal jurisdiction. Mere appointment of an agent for service of process cannot serve as a talismanic coupon to bypass this principle. We therefore affirm the district court’s dismissal of this suit for lack of personal jurisdiction.
Background
In 2007, Timothy King and his wife, Gwynne King,[1] were involved in a motorcycle accident in Montana. The Kings are Colorado residents who own four vehicles, all of which are garaged in Colorado and are insured under policies that were issued in Colorado by either American Family Mutual Insurance Company or American *573 Standard Insurance Company of Wisconsin (collectively, “the Companies”). None of the insured vehicles were involved in the accident that gave rise to this dispute.[2] The Companies do not sell insurance policies in Montana, although the Kings’ policies do provide coverage for accidents occurring anywhere within the United States.
The Companies are organized under Wisconsin state law, and their principal places of business are in Wisconsin. In 2000, the Companies began exploring the possibility of becoming authorized to issue insurance policies in Montana. As an initial step, the Companies applied for certificates of authority to transact business in the state.
In applying for the certificates, and under the governing Montana statute, the Companies executed a form appointing the Montana Commissioner of Insurance as their registered agent for service of process in Montana. See Mont.Code Ann. § 33-1-601 (2010). This appointment is “irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract.” Id.
The state issued certificates of authority to the Companies in July 2001. However, neither company has completed the process of obtaining authorization to sell insurance and transact business in Montana. Before the Companies may issue insurance policies in Montana, the Companies must also, for example, submit their rate schedules to the Insurance Commissioner, see Mont.Code Ann. § 33-16-203, submit and obtain approval of all insurance forms that will be used in Montana, see id. § 33 — 1— 501(1)(a), and submit a list of sales agents and producers, see id. §§ 33-17-231, 33-17-236. As of June 2008, the Companies had not taken any of these steps. They had, however, paid annual fees from 2002 through 2008 in order to preserve their Montana business names and the progress made on their applications to do business in the state.
In accordance with Montana law, the Companies have not conducted any business in the state of Montana. They have no offices in Montana, no employees, agents, or officers in Montana, and have never solicited business in Montana. Between 2001 and 2007, the Companies did not issue or sell any insurance policies in Montana and did not collect any premiums in the state. Had the Companies done so, because they were not authorized to sell insurance in Montana, they would have been subject to penalties and other remedies. See MontCode Ann. §§ 33-1-317, 33-1-318, 33-2-118, and 33-2-119.
Analysis
I. Montana Statutes and Case Law Govern the Question of Whether the Companies Have Consented to Personal Jurisdiction
We review de novo the district court’s ruling that it lacked personal jurisdiction over the Companies. Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir.2010). Our analysis of whether the Companies’ appointment of an agent for service of process is a sufficient hook for the exercise of personal jurisdiction begins with a line of venerable Supreme Court cases.
The Court first considered the issue in Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling *574 Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). In Pennsylvania Fire, the defendant insurer executed a power of attorney that made service on the superintendent of the insurance department of Missouri equivalent to personal service. 248 U.S. at 94, 37 S.Ct. 344. The Supreme Court held that the insurer’s appointment of a resident agent for service of process constitutionally subjected the insurer to suit in Missouri for cases growing out of the insurer’s activities both in Missouri and elsewhere. See id. at 95, 37 S.Ct. 344. The linchpin that made this holding possible, however, was the Supreme Court of Missouri’s interpretation of the governing state statute.
The Missouri statute at issue in Pennsylvania Fire
requir[ed] all [insurers doing business in Missouri] to appoint the insurance commissioner of [Missouri] as their agent to accept service of process ... and to acknowledge receipt of the same when ‘issued by any court of record, justice of the peace or other inferior court, and upon whom such process may be served for and in behalf of such company in all proceedings that may be instituted against such company in any court of this state.’
Gold Issue Mining & Milling Co. v. Pa. Fire Ins. Co. of Phila., 267 Mo. 524, 184 S.W. 999, 1004-05 (1916) (quoting Mo.Rev. Stat. § 7042 (1909)).[3] Previous versions of the Missouri statute had “limit[ed] the process of the [Missouri] courts ... to causes of action arising out of contracts ... made in [Missouri].” Id. at 1005. The Missouri Supreme Court held that, by contrast with those earlier versions, the more expansive language of the current version of § 7042 “clearly authorized the superintendent of insurance to acknowledge the receipt and service of process for any such company in any and all transitory causes of action that might be brought by any one against it in the [Missouri] courts.” Id. (emphasis added). The state supreme court went on explain at length that, so construed, § 7042 was constitutional. See id. at 1005-21.
On appeal, the Supreme Court noted that the insurer had “appoint[ed] an agent in language that rationally might be held to” subject it to personal jurisdiction for any and all suits, and noted that “[t]he language has been held to go to that length” by the state supreme court. Pennsylvania Fire, 243 U.S. at 95, 37 S.Ct. 344. The Court then affirmed the constitutionality of the statute as construed by the Missouri Supreme Court, concluding that when an insurer executes a document consenting to jurisdiction, the insurer “takes the risk of the interpretation that may be put upon [the document] by the courts.” Id. at 96, 37 S.Ct. 344. Pennsylvania Fire, in other words, holds that the appointment of an agent for service of process will subject a foreign insurer to general personal jurisdiction in the forum if the governing state statute so provides.
Later Supreme Court cases reinforce this rule. Just three years later, in Chipman, Ltd. v. Thomas B. Jeffrey Co., 251 U.S. 373, 40 S.Ct. 172, 64 L.Ed. 314 (1920), the Court applied a similar analysis, albeit without citation to Pennsylvania Fire. The Court in Chipman held that a New York statute requiring foreign corporations to designate an in-state person for service of process only extended personal jurisdiction over the corporation to cases involving business the corporation conducted in New York. Chipman, 251 U.S. at *575 379, 40 S.Ct. 172. The Court rested its decision on the New York courts’ interpretation of the statute, quoting a state court decision holding that “ ‘[u]nless a foreign corporation is engaged in business within the state, it is not brought within the state by the presence of its agents.’ ” Id. (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 917-18 (1917)). The Supreme Court thus held that there was no personal jurisdiction over a defendant corporation that, by the time of litigation, had ceased doing business in New York, even though the corporation had not yet revoked the designation of its agent for service of process. Id. at 379-80, 40 S.Ct. 172.
The Court faced a similar issue the following year. In Robert Mitchell Furniture Co. v. Selden Breck Construction Co., 257 U.S. 213, 42 S.Ct. 84, 66 L.Ed. 201 (1921), the defendant corporation had at one point conducted business in Ohio, “but its last work [there] was finished” roughly six months before suit was filed. Id. at 215, 42 S.Ct. 84. The corporation had maintained its ability to do business in Ohio — -and therefore retained an agent for service of process in that state. See id. Nevertheless, citing to both Pennsylvania Fire and Chipman, the Court held that if “the long previous appointment of the agent is the only ground for imputing to the defendant an even technical presence,” then “[u]nless the state law [requiring appointment of a statutory agent] either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere.” Id. at 216, 42 S.Ct. 84.[4] Noting that “the Ohio Statutes, so far as they go, look to ‘liability incurred within this State’ ” and that the state supreme court had not interpreted the statute more broadly, the Court held that service on the agent was defective. Id.
Robert Mitchell thus confirms that federal courts should look first and foremost to a state’s construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation. But Robert Mitchell does more than settle a dispute over the meaning of Ohio law. It also announces the default rule that, in the absence of broader statutory language or state court interpretations, the appointment of an agent for the service of process is, by itself, insufficient to subject foreign corporations to suits for business transacted elsewhere.
That principle played out eight years later in Louisville & Nashville Railroad Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711 (1929). The Court heard a dispute in which two out-of-state railway companies designated agents in Louisiana “to receive service of process as required by a state law exacting formal consent by the corporation that any ‘lawful process’ served on the designated agent should be ‘valid service’ upon the corporation.” Id. at 323-24, 49 S.Ct. 329. The Court held that jurisdiction was proper over a defendant on the ground that it was doing business in Louisiana. See id. at 326-29, 49 S.Ct. 329. Nevertheless, the Court noted that “[f]or present purposes we may assume that the effect of the designation of the statutory agent by the [railway company] is, as the state decisions cited seem to show, that a cause of action arising wholly *576 outside and wholly unconnected with any act or business of the corporation within the state may not be sued upon there.” Id. at 325, 49 S.Ct. 329 (emphasis added). As in Robert Mitchell, the Supreme Court looked to state decisions to determine the reach of personal jurisdiction in Louisiana.
Finally, in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court clarified that it is the corporate activities of the defendant, not just the mere designation of a statutory agent, that is helpful in determining whether the court has personal jurisdiction over the defendant. In upholding an Ohio state court’s exercise of jurisdiction over a non-resident corporation, the Court stated that “[t]he corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test.” Id. at 445, 72 S.Ct. 413. Whether the activities of a particular corporation “make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case.” Id. In short, the degree to which a defendant is present in the forum is an important factor in determining personal jurisdiction. The simple act of appointing a statutory agent is not, nor has it ever been, a magical jurisdictional litmus test.
Pennsylvania Fire, Chipman, and Robert Mitchell thus collectively stand for the proposition that federal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process.[5] Perkins suggests that the inquiry is particularly vital when the prospective defendant — unlike the railroads in Louisville & Nashville Railroad Co. — has done no more than explore the possibility of doing business in the forum state.[6]
*577 We accordingly turn to the relevant Montana statutes and decisions.
II. The Montana Appointment Statute Does Not Confer Jurisdiction Over the Companies for Business Done Outside Montana
A. The Governing Statute
Title 33 of the Montana Code regulates insurance companies. Pursuant to § 33-2-101, a foreign corporation that seeks to transact business in Montana must obtain a certificate of authority.[7] As part of the application process to obtain this certificate, the insurer must “appoint the commissioner [of insurance] as its attorney to receive service of legal process issued against it in Montana” and file with the commissioner the name and address to which the commissioner should forward any summons or complaint received against the insurer. Mont.Code Ann. § 33-1-601. The appointment of this agent is “irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract.” Id. The plain language of the statute therefore does not answer the question of whether the appointment subjects the Companies to suit in Montana for business conducted elsewhere.
B. Montana’s Interpretation of Its Statutory Scheme
The Supreme Court of Montana has not specifically determined the effect of § 33-1-601 on personal jurisdiction over foreign defendants. Nonetheless, in Reed v. Woodmen of the World, 94 Mont. 374, 22 P.2d 819 (1933), the state supreme court construed an earlier, similar statute that also required foreign corporations to “maintain an agent within the state upon whom service of process may be made.” Id. at 822. Specifically, the statute provided that the corporation “shall agree that any lawful process against it which is served upon such attorney shall be of the same legal force and validity as if served upon the society, and that the authority shall continue in force so long as any liability remains outstanding in this state.” Mont.Code Ann. § 6322 (1921). Although “liability ... outstanding in this state” could be read quite broadly, the Montana Supreme Court restricted the reach of the statute, stating that “[t]he object of statutes of this nature is to provide for the collection of debts due from foreign corporations from its citizens and to enforce the contracts made here by foreign corporations though its agents.” Reed, 22 P.2d at 822 (emphasis added).[8]
Reed counsels that Montana’s statutory scheme governing the appointment of an agent for the service of process was not meant to initiate a jurisdictional free-for-all by expanding personal jurisdiction to companies that have not transacted any business in Montana. To the extent that Reed is not dispositive, the default rule in Robert Mitchell applies — “we should not construe [the state statute] to extend to suits in respect of business transacted by the foreign corporation” outside Montana. Robert Mitchell, 257 U.S. at 216, 42 S.Ct. *578 84. Thus, under either Reed or Robert Mitchell, the appointment of an agent for the service of process in Montana does not confer personal jurisdiction over the Companies.
We note that the Kings’ insurance policies provide coverage for any accident that occurs anywhere in the United States. This scope of coverage does not, however, mean that the Kings may hale the Companies into any court in this nation, see, e.g., Carter v. Miss. Farm Bureau Cas. Ins. Co., 326 Mont. 350, 109 P.3d 735, 739 (2005) (“[I]t is important to emphasize that this appeal is not about whether Carter and Schmidt are covered by Carter’s [insurance] policy; rather, the question is whether or not they can litigate the coverage dispute in Montana.”), and it does not support the exercise of personal jurisdiction over the Companies. The Montana statute does not say that personal jurisdiction is proper so long as a contract is in force in Montana. Rather, it says that the appointment of an agent for service of process is effective as long as that condition holds. And, as Reed and Robert Mitchell illustrate, there is an important difference between the appointment of an agent and the extension of wide-ranging personal jurisdiction over a corporation. In other words, this case is not about whether an insurance policy might cover an incident in Montana but whether there is an insurance contract or insurance business conducted in Montana.
In sum, the Montana law regarding appointment of an agent for service of process does not, standing alone, subject foreign corporations to jurisdiction in Montana for acts performed outside of Montana, at least when the corporations transact no business in the state. Here, the Companies merely contemplated doing business in Montana; they are not amenable to suit in that state simply because they appointed the Commissioner of Insurance as their agent for service of process.
III. Personal Jurisdiction Under Montana’s Long-Arm Statute
Because § 33-1-601 does not confer jurisdiction over the Companies, we consider whether the district court had jurisdiction over the Companies under other theories of general or specific personal jurisdiction.
“Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.” Yahoo! Inc. v. La Ligue Contre Le Racisme et L’Antisemitisme, 433 F.3d 1199, 1205 (9th Cir.2006). We have recognized that Montana Rule of Civil Procedure 4B(1), which serves as the state’s long-arm statute, “permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process.”[9] Davis v. Am. *579 Family Mut. Ins. Co., 861 F.2d 1159, 1161 (9th Cir.1988). As a result, “the jurisdictional analyses under state law and federal due process are the same.” Yahoo!, 433 F.3d at 1205.
A. The Companies Are Not Subject to General Personal Jurisdiction in Montana
The exercise of general personal jurisdiction allows courts to hear any cases involving a particular defendant. However, “[t]he standard for general jurisdiction is high.... [A] defendant must not only step through the door, it must also ‘[sit] down and [make] itself at home.’ ” Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir.2006) (internal citation omitted) (quoting Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1125 (9th Cir.2002)). The standard is met only by “continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.” Int’l Shoe Co. v. Washington, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945); accord Helicopteros Nacionales de Colombia, S.A v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (holding that if a defendant’s contacts with a state are “continuous and systematic,” it may be haled into court in that state in any action). For general jurisdiction to obtain, the defendant’s contacts must approximate physical presence in the forum. See Yahoo!, 433 F.3d at 1205.
The Companies’ contacts in Montana do not come close to meeting this standard. The Companies have no offices or employees in Montana, have made no sales in Montana, have solicited no business in Montana, and are unable to issue or sell insurance in the state. In fact, the Companies’ sole contacts with Montana are their initial Certificates of Authorization and their appointments of the Insurance Commissioner as an agent for service of process. These contacts hardly approximate physical presence and are not “continuous and systematic.” American Family has not set up a “home” in Montana. Accordingly, the court cannot exercise general personal jurisdiction over the Companies.
B. The Companies Are Not Subject to Specific Personal Jurisdiction in this Case
We employ a familiar three-prong test to evaluate whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:
(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant’s forum-related activities; and
*580 (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir.2010). “If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.” Omeluk v. Langsten Slip & Batbyggeri AJS, 52 F.3d 267, 270 (9th Cir.1995).
Under the first prong, the Montana Supreme Court has previously considered whether Montana courts have specific personal jurisdiction over an insurer that, like the Companies, “has no offices or agents in Montana, does not advertise [t]here, and is not authorized to conduct business in Montana as a foreign insurer.” Carter, 109 P.3d at 738. The court held that, even though the accident triggering coverage under a nationwide insurance policy took place in Montana, “there was no basis for a finding of jurisdiction under” the state long-arm statute. Id. at 742. Carter thus precludes the exercise of specific personal jurisdiction over the Companies under Rule 4B(1).[10]
Conclusion
The Companies have dipped their toes in Montana to test the waters for doing business, but their actions do not amount to a foot planted in the state for purposes of personal jurisdiction. Under Montana law, the Companies’ acts of beginning the process of applying to do business and appointing an agent for service of process provide an insufficient basis for the exercise of personal jurisdiction.
AFFIRMED.

. Gwynne King has since been dismissed as a party to this appeal.

. We express no opinion about where the dispute between the parties actually "arose.” This issue was not before the district court, and the parties do not raise it on appeal.

. The appointment of the insurance commissioner remained valid "so long as [the insurer had] any policies or liabilities outstanding in [Missouri].” Mo.Rev.Stat. § 7042 (1909).

. The Court grounded this common-sense interpretation in the fact that "[t]he purpose in requiring the appointment of such an agent is primarily to secure local jurisdiction in respect of business transacted within the State." Robert Mitchell, 257 U.S. at 215, 42 S.Ct. 84 (emphasis added).

. Several influential secondary sources adopt this principle. As the Restatement (Second) of Conflict of Laws puts it,
[i]f a corporation has authorized an agent or a public official to accept service of process in actions brought against it in the state, the extent of the authority thereby conferred is a question of interpretation of the instrument in which the consent is expressed and of the statute, if any, in pursuance of which the consent is given. It is a question of interpretation whether the authority extends to all causes of action or is limited to causes of action arising from business done in the state.... By qualifying under one of these statutes, the corporation renders itself subject to whatever suits may be brought against it within the terms of the statutory consent as interpreted, by the local courts provided that this interpretation is one that may fairly be drawn from the language of the enactment.
Restatement (Second) of Conflict of Laws § 44 cmt. c (1971) (emphasis added); see also 36 Am.Jur.2d Foreign Corporations § 172 (2010) ("A corporation which engages in business in a state other than its state of incorporation is presumed to have accepted the conditions imposed by the laws of that state on the right of foreign corporations to do business therein and is bound by them accordingly, except insofar as they are subject to attack on constitutional grounds.”).

. The dissent emphasizes that none of the later cases overruled Pennsylvania Fire. We agree. But the dissent's interpretation of Pennsylvania Fire cannot be squared either with the carefully circumscribed analysis in that case or with the Supreme Court's later decisions. The dissent implicitly recognizes as much by noting that, in Robert Mitchell and Louisville, “the Court emphasized that it all depended on how broadly or narrowly the appointment was treated by the state itself.” Dissent at 583 (citing Louisville, 279 U.S. at 329, 49 S.Ct. 329); see also id. (discussing Robert Mitchell). The dissent, however, fails to extend that principle to this case.

. Montana law specifies that no certificate of authority is required to issue a policy to subjects "not resident, located, or expressly to be performed in Montana at time of issuance, and which coverage was lawfully solicited, written, and delivered outside Montana.” Mont.Code Ann. § 33-2-102 (2010).

. This principle is not a startling one; Reed puts Montana law in the company of the Ohio and New York laws discussed in Chipman and Robert Mitchell.

. Montana Rule of Civil Procedure 4B(1) provides as follows:
All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
(a) the transaction of any business within this state;
(b) the commission of any act which results in accrual within this state of a tort action;
(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;
(d) contracting to insure any person, property or risk located within this state at the time of contracting;
(e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
*579 [[Image here]]
Mont. R. Civ. P. 4B(1). The Montana Supreme Court has explained that "[t]he first sentence of Rule 4B(1) ... states the requirements for general jurisdiction. The remainder of Rule 4B(1) ... states the requirements for specific long-arm jurisdiction.” Cimmaron Corp. v. Smith, 315 Mont. 1, 67 P.3d 258, 260 (2003).

. Our decision in Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911 (9th Cir.1990), is not to the contrary. Although we held in Fanners that a foreign insurer could be subjected to personal jurisdiction in Montana, Farmers was an indemnity dispute. As a result, Farmers was "a case in which a company’s insured is sued as a result of a car accident in a foreign state,” "arguably [giving rise to] an obligation to appear and defend the driver,” while this is a case, like Carter, in which "the insured is suing its ... insurer in a foreign state for breach of contract.” Carter, 109 P.3d at 741.