Justice Jim Rice delivered the Opinion of the Court.
***384 ¶1 Scottsdale Insurance Company (Scottsdale) appeals from the deemed denial of its motion to set aside the default judgment entered against it by the Eleventh Judicial District Court, Flathead County. We reverse the entry of the default judgment and remand for further proceedings, addressing the following issue:
Did the District Court err in denying, by operation of law, Scottsdale's M. R. Civ. P. 60(b)(4) motion to set aside the default judgment?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 This action arises out of an insurance coverage dispute between Scottsdale, the Payne Defendants (Payne) and Reservation Operations Center, LLC, d/b/a National Parks Reservations (NPR). In 2011, Payne served as NPR's procuring agent to secure commercial insurance coverage from Scottsdale. It is alleged that Payne also attempted to procure for NPR an Employment Practices Liability Policy (EPL) from Scottsdale. NPR believed Payne had obtained EPL coverage from Scottsdale, but apparently it was not secured. In 2015, NPR notified Scottsdale of a pregnancy discrimination claim brought by an NPR employee and sought coverage for the claim under the EPL policy, *123 which Scottsdale denied. NPR filed a grievance against Scottsdale with the Office of the Montana State Auditor, Commissioner of Securities and Insurance (Commissioner). Scottsdale offered to provide retroactive EPL coverage upon several conditions, but later withdrew the offer. On October 26, 2015, NPR delivered a demand letter to Scottsdale, indicating that NPR would initiate litigation for refusal to provide coverage and including a courtesy copy of NPR's proposed complaint.
¶3 On November 6, NPR filed a Complaint and Demand for Jury Trial (Complaint), naming Scottsdale and Payne. Because Scottsdale is a foreign insurer,[1] NPR was statutorily required to serve Scottsdale through the Commissioner's office by providing the Commissioner ***385 duplicate copies of the Summons and Complaint, along with a $10 filing fee. On April 5, 2016, the Commissioner signed an acknowledgment of service of documents received from NPR. In turn, the Commissioner was statutorily required to forward the Complaint and Summons to Scottsdale. Further facts regarding NPR's and the Commissioner's compliance with the statutory requirements governing the service of process will be discussed herein.
¶4 Scottsdale failed to appear and, upon NPR's request, the clerk of court entered a default on May 18, 2016. On January 12, 2017, the District Court entered a partial default judgment against Scottsdale, holding that Scottsdale breached its duty to defend NPR in the pregnancy discrimination claim, and was liable for all fees, costs, settlements, and consequential damages. After an initial damages hearing, the District Court concluded that NPR was entitled to $515,758.02 in compensatory damages, and after a separate punitive damages hearing, awarded NPR $4,641,822.18 in punitive damages, with accruing interest at 10% per annum, entering a final judgment on May 9, 2017.
¶5 On July 7, Scottsdale appeared and moved to set aside the default judgment. Scottsdale argued that both NPR and the Commissioner had failed to strictly comply with foreign insurer service requirements under § 33-1-603(1), MCA, and, thus, the default judgment was void pursuant to M. R. Civ. P. 60(b)(4). Scottsdale asserted NPR failed to serve duplicate copies of both the Summons and Complaint upon the Commissioner, and that the Commissioner failed to include a copy of the Complaint in its mailing to Scottsdale. In support of its motion, Scottsdale submitted affidavits from the employee who opened the mailing from the Commissioner, as well as record retention employees. NPR opposed the motion and countered with affidavits from NPR's attorney and the Commissioner's Chief Legal Counsel.
¶6 After 60 days passed without a ruling on the motion by the District Court, on September 7, 2017, Scottsdale's motion to set aside the default judgment was deemed denied under M. R. Civ. P. 60(c)(1).[2] Scottsdale appeals.
STANDARD OF REVIEW
¶7 "Our standard of review of a district court's ruling on a motion ***386 pursuant to M. R. Civ. P. 60(b) depends on the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the Rule 60(b) motion." Essex Ins. Co. v. Moose's Saloon, Inc. , 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451. "Where the movant seeks relief under Rule 60(b)(4), on the ground the judgment is void, we review the district court's ruling de novo, as the determination that a judgment is or is not void is a conclusion of law." In re Guardianship & Conservatorship of Anderson , 2009 MT 344, ¶ 8, 353 Mont. 139, 218 P.3d 1220 (citing Essex , ¶ 16 ).[3] *124 DISCUSSION
¶8 A default judgment is a final decision of a court of law. Wittich Law Firm, P.C. v. O'Connell , 2013 MT 122, ¶ 25, 370 Mont. 103, 304 P.3d 375. " Rule 60(b) is an exception to the doctrine of finality of judgments only insofar as it allows relief from an otherwise final judgment 'where a party was wronged through no fault of its own.' " Wittich Law Firm, P.C. , ¶ 25 (citation omitted). A judgment is void under M. R. Civ. P. 60(b)(4) where the court issuing the judgment lacked jurisdiction. Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc ., 2009 MT 362, ¶ 21, 353 Mont. 201, 219 P.3d 881. Personal jurisdiction is only obtained through "strict compliance" with the rules of service. Blaskovich v. Blaskovich , 249 Mont. 248, 250, 815 P.2d 581, 582 (1991). Defective service of process constitutes proper grounds to set aside a default judgment. Mont. Prof'l Sports, LLC v. Nat'l Indoor Football League, LLC , 2008 MT 98, ¶ 23, 342 Mont. 292, 180 P.3d 1142. "[A]ctual knowledge of a lawsuit is no substitute for proper service." Semenza v. Kniss , 2005 MT 268, ¶ 16, 329 Mont. 115, 122 P.3d 1203.
¶9 "In reviewing a default judgment, we are guided by the principle that a case should be decided on its merits; judgments by default are not favored." Nikolaisen v. Advance Transformer Co. , 2007 MT 352, ¶ 14, 340 Mont. 332, 174 P.3d 940 (citation omitted). If doubt exists concerning whether a default should be set aside, the doubt should be resolved in favor of the motion to set it aside. Sun Mt. Sports, Inc. v. Gore , 2004 MT 56, ¶ 29, 320 Mont. 196, 85 P.3d 1286 (citation omitted). "The party seeking to set aside a default has the burden of proof." Mont. Prof'l Sports, LLC , ¶ 21.
***387 ¶10 Did the District Court err in denying, by operation of law, Scottsdale's M. R. Civ. P. 60(b)(4) motion to set aside the default judgment?
¶11 A plaintiff must serve a foreign insurer through the Commissioner. See § 33-1-601, -602, MCA. Three tasks must be performed to complete service of process upon a foreign insurer: (1) the plaintiff must provide the Commissioner[4] with duplicate copies of the Summons and Complaint; (2) the plaintiff must pay the Commissioner a $10 service fee; and (3) the Commissioner must "promptly" forward a copy of the Summons and Complaint by certified mail to the person designated by the insurer to receive the service. See § 33-1-603(1), MCA. "Process served upon the commissioner and a copy of the process forwarded as provided in this section constitutes service of the process upon the insurer." Section 33-1-603(3), MCA. To determine whether service was properly effectuated under these provisions, we turn to the parties' arguments and a de novo review of the record.
A. NPR's service upon the Commissioner.
¶12 Scottsdale first argues that NPR failed to provide the Commissioner with duplicate copies of the Complaint as required by § 33-1-603(1), MCA. Scottsdale also faults the Commissioner for not maintaining a log or other record to verify the number of copies of service documents received by that office, because here the question of whether duplicate copies were received by the Commissioner cannot be confirmed by an internal office record. NPR responds that the record demonstrates NPR strictly performed the service tasks required by statute.
¶13 Scottsdale's contention that "NPR provided only a single copy of the Complaint and Demand for Jury Trial" is very brief and relies only upon an inference drawn from a cover letter from David Berkoff, counsel for NPR, to the Commissioner, that refers to a singular "Complaint," as opposed to a plural reference to that document. However, review of the record as a whole eliminates the validity of this objection.
¶14 NPR submitted affidavits from Berkoff and Jesse Laslovich, the Commissioner's Chief Legal Counsel. Berkoff attested that on December 4, 2015, he instructed his paralegal to forward duplicate copies of the Summons *125 and Complaint to the Commissioner. Berkoff's December 4, 2015 cover letter to the Commissioner stated the following ***388 documents were enclosed:
1. Original and copy of Summons for Scottsdale Insurance Company;
2. Copy of Complaint and Demand for Jury Trial; and,
3. Plaintiff's First Discovery Requests to Defendant Scottsdale Insurance Company.
We note here that the Complaint was a 21-page document, and that the First Discovery Requests was a 16-page document.
¶15 Berkoff attested that in January 2016, he received a call from Darla Sautter, legal secretary at the Commissioner's office, indicating that the $10 service fee had been omitted, but that Sautter did not state the service package was otherwise defective. Thus, Berkoff attested that, on January 13, he instructed the paralegal in his office to send the $10 service fee and an additional copy of each of the three documents-the Complaint, the Summons, and the First Discovery Requests-to Sautter. Berkoff's January 13 cover letter to the Commissioner stated that enclosed was "a $10.00 check for the service of the Complaint, Summons, and Discovery on Scottsdale Insurance Company" and requested the Commissioner to "serve the documents" on Scottsdale. Consequently, Berkoff attests that he provided, in total, three copies of the Summons and Complaint to the Commissioner.
¶16 Additionally, Laslovich attested as follows, in regard to NPR's service efforts:
Parties who failed to properly comply with the requirements of Montana Code Annotated §§ 33-1-601 et seq. including payment of the $10.00 filing fee or providing a copy of a summons and complaint, would be promptly notified that the requirements had not been met. In those circumstances, the service of process documents provided would be returned or retained by our office to allow compliance; however, service of process would not be forwarded to the insurer as prescribed under Montana Code Annotated §§ 33-1-603 until compliance with the requirements was met ... On April 5, 2016, I signed an Acknowledgment of Receipt of Summons and Complaint on behalf of the Insurance Commissioner. My signed acknowledgement and Receipt of Summons and Complaint indicates that under penalty of perjury I received copies of both the Summons issued to Scottsdale Insurance Company and the Complaint and Demand for Jury Trial in this matter.
¶17 Scottsdale's position, drawn from the reference to a singular "Complaint" in Berkoff's December 4, 2015, cover letter, does not rebut the fact that, in this process, Berkoff provided at least two copies of the ***389 Complaint, or a "duplicate" set, to the Commissioner. Thus, Scottsdale has failed to meet its "burden of proof," Mont. Prof'l Sports, LLC , ¶ 21, by demonstrating facts to rebut Berkoff's attestations that multiple copies of the documents were provided to the Commissioner, as well as the Commissioner's attested course of conduct of delaying service upon the insurer until the plaintiff complied with statutory requirements, and the Commissioner's signed Acknowledgment of Receipt of Summons and Complaint indicating under penalty of perjury he received the statutorily-required documents as submitted by NPR.
B. The Commissioner's service upon Scottsdale.
¶18 Scottsdale acknowledges that its designee for receipt of service of process, Corporation Service Company, Inc. (CSC), received a certified letter, the Summons, and the 16-page First Discovery Requests from the Commissioner, but contends the Commissioner failed, as required by § 33-1-603(1), MCA, to also provide a copy of the 21-page Complaint with its certified letter. NPR argues Scottsdale fails to meet its burden of proving it was not served by the Commissioner. NPR argues that, once it completed the required tasks, it satisfied all its obligations and has no control over the process after it is handed over to the Commissioner.
¶19 In support of its motion to set aside the default judgment, Scottsdale submitted an affidavit from Michelle Van Nice, an employee of Smith Law Firm in Helena, CSC's agent to receive service of process for Scottsdale from the Commissioner. Van Nice attested *126 she opened the certified mailing from the Commissioner on April 11, 2016, and that it contained only the Commissioner's letter, the Summons, and the 16-page First Discovery Requests. Van Nice further attested she scanned these three documents into her computer and uploaded them into CSC's electronic database. Steve Kirvan, a Service of Process Research Coordinator for CSC, attested that CSC's electronic database did not have a record of receiving a copy of the Complaint from the Commissioner, only the letter, Summons and First Discovery Requests. Joshua Schonauer, Manager of Nationwide's Service of Process intake program,[5] likewise averred that Scottsdale's electronic database did not contain a record of a Complaint received from the Commissioner. Schonauer explained that CSC's online portal communicates directly with Nationwide's proprietary matter management platform, "Team Connect," which automatically pulls down copies of each service held ***390 in CSC's portal directly onto Nationwide's server.
¶20 Laslovich attested to the Commissioner's custom and practice in serving process upon an insurer:
When it was determined by our office that the party attempting service had fully complied with the service of process requirements set forth in Montana Code Annotated § 33-1-601, et seq., our office would forward (to the insurer or the insurer's appointed agent) a certified mail return receipt requested letter notifying the insurer or insurance company's appointed agent of the lawsuit. Our certified letter would include copies of the Summons and Complaint as well as any other attached or included documents or pleadings . [ (Emphasis added.) ]
In his first affidavit, Laslovich observed, "[o]n April 5, 2016, I personally reviewed and signed a letter on behalf of the Insurance Commissioner notifying [Scottsdale] of this lawsuit," and that "[m]y letter enclosed a copy of the Summons and Complaint." However, in a second affidavit, Laslovich clarified that the statement made in his first affidavit, attesting that his letter to Scottsdale had "enclosed a copy of the Summons and Complaint," was based on "custom and practice" in the Commissioner's office, and he had no personal knowledge about whether, in this particular case, the Complaint was actually included in the mailing. Laslovich explained that his assistant was tasked with preparing the packet of documents and mailing the packet to CSC. He averred that the "normal process would have been for [his assistant] to bring [the certified] letter to me along with a copy of the Summons and Complaint" for his review and signature, but that, "while I assume and believe such tasks were performed consistent with our custom and practice, I did not personally witness her perform them and therefore, cannot definitely state they were performed." Other than the attestation regarding custom and practice, no affidavits were submitted by anyone with personal knowledge attesting that, specifically, the Complaint was included in the packet of documents that were certified-mailed with the Commissioner's letter to Scottsdale. In this regard, an affidavit from the Commissioner's custodian of service-of-process records attests only generally that the records indicate the office "forwarded by certified mail a copy of the service in this matter to [CSC] on April 5, 2016." (Emphasis added). Although attesting the Commissioner's regular practice "during the course of a service of process transaction [is] to retain the original or a copy of all documents received from plaintiff's counsel," the custodian's affidavit does not specifically delineate the documents so received, which would have included Berkoff's letters, the Summons, the 21-page Complaint, ***391 and the 16-page First Discovery Requests. The custodian further explains that the documents received from the plaintiff would not otherwise have been identified, as that office "does not maintain a separate log recording all documents, or the number of copies of documents, received by the [Commissioner] in the course of a transaction." *127 ¶21 Given Laslovich's attestation that, as a matter of course, the Commissioner's certified letter of service to Scottsdale would have included copies of the Summons and Complaint "as well as any other attached or included documents or pleadings," it is clear that the certified letter failed to reference all of the documents that were to be served upon Scottsdale, and thus raises doubt about whether its description of the enclosures was accurate, and the Complaint was included. As noted above, the Commissioner's certified letter to CSC stated only that the Summons and the 21-page Complaint were enclosed. It said nothing about the 16-page First Discovery Requests that was unquestionably enclosed with the letter, and received by CSC. This raises the specter that the First Discovery Requests document was enclosed with the certified letter and the Summons, rather than, or instead of, the similarly-sized Complaint.
¶22 The affidavits from the Commissioner's office, quoted above, acknowledge that the internal tracking system then operated by the office could not verify that this mistake did not occur. Although the office practice was to keep copies of all documents "during the course of a service of process transaction," those documents are apparently not available now in a manner that could verify the specific contents of the service packet sent to Scottsdale, and neither was a log of the documents maintained. As NPR correctly observes, a plaintiff has no control over the service process once it completes its statutory obligations for service to the Commissioner.
¶23 Personal jurisdiction can only be obtained through "strict compliance" with the rules of service, Blaskovich , 249 Mont. at 250, 815 P.2d at 581. "If doubt exists concerning whether a default should be set aside, the doubt should be resolved in favor of the motion to set it aside." Gore , ¶ 21. Scottsdale has established that doubt exists regarding whether service was properly completed by the Commissioner, and thus has met its burden of proof. The totality of the circumstances supporting reversal include: (1) Van Nice's attestation that the mailing from the Commissioner, upon its opening, did not include the 21-page Complaint, and consequently, it was not uploaded into CSC's online portal, but that the 16-page First Discovery Requests was included and uploaded; (2) the attestations of other CSC and ***392 Scottsdale employees that there was no record of a Complaint received from the Commissioner in their databases, but that the First Discovery Requests was so recorded; (3) Laslovich's clarification that he could attest to custom and practice of the Commissioner's office but had no personal knowledge of whether the Complaint was enclosed in his letter to Scottsdale; (4) Laslovich's cover letter to Scottsdale failed to accurately describe the documents enclosed; (5) no attestations are made by anyone with personal knowledge about whether the Complaint was actually enclosed in the mailing; and (6) the Commissioner had no internal system that would permit identification at a later time of the specific documents actually received from the plaintiff and actually mailed from its office to Scottsdale.[6]
¶24 Given Scottsdale's satisfaction of its burden, we reverse the deemed denial of the motion to set aside the default judgment pursuant to M. R. Civ. P. 60(b)(4). We conclude the motion to set aside the default *128 judgement is granted, and remand this matter for further proceedings.
¶25 Reversed and remanded.
We concur:
LAURIE McKINNON, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

A "foreign insurer" is an insurer formed under the laws of any jurisdiction other than this state. Section 33-1-201(4), MCA.

Effective July 1, 2017, M. R. Civ. P. 59(f) and 60(c)(1) authorize district courts to timely extend the initial 60-day deadline for up to 120 days after the filing of a Rule 60(b) motion. See M. R. Civ. P. 59(f) (2017).

In Essex , we overruled the "slight abuse of discretion" standard of review in appeals challenging a district court's deemed denial of a motion to set aside a void default judgment under M. R. Civ. P. 60(b)(4), in favor of de novo review. Essex , ¶ 16, n.2.

Or, "the commissioner's deputy or other person in charge of the office during the commissioner's absence." Section 33-1-603(1), MCA.

Nationwide Mutual Insurance Company is now the parent company of Scottsdale Insurance Company.

NPR argues, alternatively, that in the policy, Scottsdale designated the Commissioner to be Scottsdale's attorney entitled to receive service of process on Scottsdale's behalf and, thus, even if Scottsdale could show that the Commissioner failed to forward a copy of the Complaint to CSC, Scottsdale was nonetheless properly served pursuant to the policy. This argument fails. First, the policy provision is based on a statutory requirement for an insurer to transact business in Montana. In order to obtain a certificate of authority, a foreign insurer must "appoint the commissioner as its attorney to receive service of legal process issued against it in Montana." Section 33-1-601, MCA. The statute does not itself operate to confer jurisdiction of the court, but, rather, is a step in the procedural process for a foreign insurer to obtain authority to do business in Montana. See e.g. , King v. Am. Family Mut. Ins. Co. , 632 F.3d 570, 577 (9th Cir. 2011). This statute does nothing to alter the clear requirements for service of process upon foreign insurers, which is complete only upon "process served upon the commissioner and a copy of the process forwarded" to "the person last designated by the insurer to receive the service." Section 33-1-603, MCA. Service of process cannot be contractually effectuated.