JUSTICE WARNER
delivered the Opinion of the Court.
¶1 The Plaintiffs, Plentywood Electric and Robert and Judy Nikolaisen (collectively “Plentywood”), seek damages from Advance Transformer Co. (“Advance”) incurred when a fire destroyed Plentywood Electric. The fire was allegedly caused by a defective light ballast manufactured by Advance. The District Court of the Fifteenth Judicial District entered a default judgment in favor of Plentywood. Advanced moved for relief from the judgment. The motion was deemed denied as the District Court did not rule on it within the time provided. Advance now appeals from the denial of its motion to set aside the default judgment.
ISSUES
¶2 Advance raises four issues on appeal. However, we determine that the District Court erred in not granting Advance’s motion to set aside the default judgment pursuant to M. R. Civ. P. 60(b)(4), based on improper service of process. Therefore, we do not fully discuss the other issues Advance raises.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On November 19, 2002, a fire destroyed Plentywood Electric, owned by the Nikolaisens. The State Fire Marshall investigated the fire the following day and, according to Plentywood, concluded that a ballast manufactured by Advance had caused the fire. Within days, Plentywood notified Advance of the fire.
¶4 Upon notification of the potential claim against it, Advance and its insurer, Travelers Insurance Co. (“Travelers”), retained an investigator to visit the fire scene and inspect the ballast. Plentywood’s insurer, Austin Mutual, also sent an investigator to inspect the scene and the ballast. The two investigators examined the ballast in January 2003 and again in August 2003. Robert Erhardt, the Director of *334 Technical Relations for Advance, attended the August 2003 inspection. In Erhardt’s opinion, Advance had several defenses to liability.
¶5 On November 18, 2004, Austin Mutual, asserting a subrogation claim for payments it had made to Plentywood, filed suit against Advance, but did not serve its complaint. On November 19, 2004, Plentywood filed a complaint against Advance, seeking recovery of the uninsured portion of its alleged loss. Likewise, Plentywood made no attempt at that time to serve its summons and complaint.
¶6 On February 10, 2005, Plentywood’s counsel sent Advance a demand letter for approximately $760,578.00, representing its claimed uninsured loss. The letter was addressed to Advance’s office in Rosemont, Illinois, but was not directed to a particular individual. The letter stated that Plentywood would file a complaint if it did not receive Advance’s reply by March 1,2005. This letter reached Erhardt on or around February 15, at which time he contacted Tim Costello, the Technical Specialist for Travelers, and tendered the claim to Travelers. Erhardt also provided a copy of Plentywood’s demand letter to Costello. On February 17, 2005, Costello contacted Plentywood’s counsel and requested documentation supporting its claim. He also asked that counsel direct all future correspondence on the claim.to him. During the several communications between them, Plentywood’s counsel at no time mentioned that he had already filed a complaint against Advance.
¶7 On March 4, 2005, Plentywood’s counsel provided the documentation that Travelers had requested. Counsel again indicated his intent to file a complaint against Advance if he did not hear from Travelers or Advance by March 20. On March 25, 2005, Costello contacted Plentywood’s attorney and informed him that, based on Advance’s conclusion that valid defenses to the claim existed, an offer would not be forthcoming. Again, Plentywood’s counsel did not mention that he had already filed a complaint.
¶8 On April 5, 2005, Plentywood’s counsel filed an amended complaint against Advance. Despite knowing Advance’s address, and having had prior contact with both Advance and its insurer Travelers, counsel did not advise either that he had filed the amended complaint. Nor did counsel make any attempt to serve Advance directly. Rather, on April 19, counsel for Plentywood filed an affidavit with the District Court for the purpose of having the Montana Secretary of State appointed as Advance’s agent for service of process pursuant to M. R. Civ. P. 4D(2)(f). The Clerk of the District Court appointed the Montana Secretary of State as Advance’s agent for service and on April 20, the *335 Secretary of State was served with the original and the proper number of copies of the summons and the amended complaint, as well as a copy of Plentywood’s counsel’s affidavit. On April 25,2005, the Secretary of State mailed the documents, return receipt requested, to Advance Transformer Co., at its address in Illinois provided by Plentywood’s counsel.
¶9 On May 9, 2005, a courier employed by Advance signed for and accepted the documents. On May 11, 2005, the Secretary of State received the return receipt.
¶10 On June 8, 2005, after receiving no answer to the amended complaint, Plentywood’s counsel requested entry of default against Advance, and the Clerk of District Court entered the default. On July 12, 2005, Plentywood’s counsel moved for entry of a default judgment in the amount of $1,301,487.19, representing Plentywood’s claimed uninsured loss, Austin Mutual’s loss payments under its policy with Plentywood, and $165.00 in costs. On July 18,2005, the District Court held a hearing on the matter. The record does not indicate that Plentywood’s counsel informed the presiding judge that he had previously been in contact with Advance, that Advance was insured by Travelers, that he had been communicating with Travelers, or that Plentywood’s claim had been denied. The District Court entered default judgment in favor of Plentywood in the amount of $1,301,487.19 together with interest at a rate of 10% until paid in full, pursuant to § 25-9-205(1), MCA.
¶11 On September 19, 2005, just after the 60 day window when Advance could obtain relief from the default judgment under M. R. Civ. P. 60(b)(1), Plentywood’s counsel obtained an authenticated copy of the default judgment. Advance maintains that on September 30, 2005, it first discovered that Plentywood had filed a complaint against it and that a default judgment had been entered in the District Court. Both Costello and Erhardt state that they had no contact with Plentywood or Austin Mutual between March 25 and September 30, 2005.
¶12 Once Advance discovered the default judgment, it immediately retained counsel. On October 11,2005, Advance moved to set aside the default judgment and filed an answer to Plentywood’s amended complaint. Advance argued in its motion that no one “in authority at Advance” ever received the summons and amended complaint; therefore, service was inadequate, the default judgment should be set aside, and it should have the opportunity to defend.
¶13 Plentywood objected to the motion and moved to strike Advance’s *336 answer. The District Court did not act on the motion. On December 19, 2005, the District Court entered an order stating that since more than 60 days had elapsed since Advance filed its motion to set aside the default judgment, it was deemed denied. Advance filed a timely appeal.
STANDARDS OF REVIEW
¶14 In reviewing a default judgment, we are guided by the principle that a case should be decided on its merits; judgments by default are not favored. Matthews v. Don K Chevrolet, 2005 MT 164, ¶ 9, 327 Mont. 456, ¶ 9, 115 P.3d 201, ¶ 9 (citations omitted). We generally review the denial of a motion to set aside a default judgment for only a slight abuse of discretion. The party seeking to set aside a default judgment has the burden of proof. Matthews, ¶ 9. However, we will also review a district court’s conclusions of law to determine if they are correct. Fonk v. Ulsher, 260 Mont. 379, 383, 860 P.2d 145, 147 (1993). Whether the district court has jurisdiction over the case is a conclusion of law. Semenza v. Kniss, 2005 MT 268, ¶ 9, 329 Mont. 115, ¶ 9, 122 P.3d 1203, ¶ 9.
DISCUSSION
¶15 Advance argues the District Court abused its discretion when it denied the motion to set aside the default judgment because Plentywood did not correctly serve Advance as required by M. R. Civ. P. 4D(2), (3).
¶16 A default judgment may be set aside if the judgment is void. M. R. Civ. P. 60(b)(4). If the plaintiff does not properly serve the defendant pursuant to M. R. Civ. P. 4D, the judgment is void because without proper service the district court does not obtain personal jurisdiction over a party. See Ihnot v. Ihnot, 2000 MT 77, ¶ 8, 299 Mont. 137, ¶ 8, 999 P.2d 303, ¶ 8. Each step of the procedure prescribed by Rule 4D requires strict and literal compliance to support a judgment based on substituted or constructive service. Shields v. Pirkle Refrigerated Freightlines Inc., 181 Mont. 37, 43-44, 591 P.2d 1120, 1124 (1979), overruled on other grounds, Roberts v. Empire Fire & Marine Inc. Co., 276 Mont. 225, 228, 915 P.2d 872, 873 (1996); Ihnot, ¶ 13. See also Joseph Russell Realty Co. v. Kenneally, 185 Mont. 496, 502, 605 P.2d 1107, 1110 (1980).
¶17 M. R. Civ. P. 4D outlines the procedure for service of summons upon an out-of-state corporation, such as Advance. Reference to several parts of the Rule is necessary. *337 ¶ 18 Rule 4D(2)(e) provides that service may be had upon a corporation doing business in Montana by delivering a copy of the summons and complaint to an officer, director, manager, or associate for such corporation; or by leaving such copies at the office or place of business of the corporation, with the person in charge of such office. Rule 4D(3) provides that “[w]here service upon any person cannot, with due diligence, be made personally within this state, service of summons and complaint may be made outside this state in the manner provided for service within this state, with the same force and effect as though service had been made within this state.” Thus, Advance, an out-of-state corporation, is to be served in the same manner as a corporation that is found in Montana.
¶19 Rather than attempt to serve Advance as provided in Rules 4D(2)(e) and 4D(3), Plentywood went straight to the provisions of Rule 4D(2)(f), which is designed to accomplish service on an out-of-state corporation when personal service cannot be accomplished with reasonable diligence. In pertinent part, Rule 4D(2)(f), states:
[If] none of the persons designated in D(2)(e) immediately above [i.e., officer, director, manager ... superintendent or managing or general agent, or partner, or associate for such corporation] can with the exercise of reasonable diligence be found within Montana, the party causing summons to be issued shall exercise reasonable diligence to ascertain the last known address of any such person. If, after exercising reasonable diligence, the party causing summons to be issued is unsuccessful in serving said parties, an affidavit must be filed with the clerk of court in which the claim for relief is pending reciting that none of the persons designated in D(2)(e) can after due diligence be found within Montana upon whom service of process can be made, and reciting the last known address of any such person ....
M. R. Civ. P. 4D(2)(f) (bracketed material and emphasis added).
¶20 In order to utilize the provisions of Rule 4D(2)(f) and complete service of process by service on the Montana Secretary of State, Plentywood was first required to exercise reasonable diligence to find an officer or other representative of Advance to serve in Montana. Since there was no agent for Advance in Montana, Plentywood’s counsel was next required to use reasonable diligence to ascertain Advance’s address. As counsel well knew Advance’s address, the Rule required that Plentywood attempt service at that address. Only when, after the exercise of reasonable diligence, “the party causing the summons to be issued is unsuccessful in serving” the summons and *338 complaint may that party effectively substitute service on Secretary of State. M. R. Civ. P. 4D(2)(f).
¶21 The obvious reason for the procedure allowing service through the Secretary of State is to allow for personal service when a company cannot be otherwise served in the manner provided for in Rule 4D(2)(e) and Rule 4D(3). There is no reason to include in Rule 4D(2)(f) the statement that the party seeking service upon a company which cannot be found in Montana must be “unsuccessful in serving said parties” before filing the affidavit for service on the Secretary of State, if it is not necessary to have first unsuccessfully attempted such service. This interpretation of Rule 4D(2)(f) is also required by its provision concerning service on a corporation by service on the Secretary of State, as follows: “[i]n any action where due diligence has been exercised to locate and serve any of the persons designated in D(2)(e) above, service shall be deemed complete upon said corporation.” M. R. Civ. P. 4D(2)(f) (emphasis added). Again, only after a party has exercised reasonable diligence to personally serve the out-of-state corporation can the Secretary of State be appointed the agent of such corporation for service of process.
¶22 The dissent fails to recognize that the rules for service of process must be strictly followed because notice and opportunity to be heard are of the utmost importance. Thus, strict and literal compliance with the rules is necessary. E.g. Shields, 181 Mont. at 43-44, 591 P.2d at 1124. Compliance with the rules not only serves due process; it avoids the problems illustrated by this case. Had Plentywood’s counsel followed the service requirements of Rule 4D(2)(e) and Rule 4D(3), as noted above, the summons and complaint would have been personally delivered to Advance by a process server.
¶23 As noted by the dissent, Plentywood’s counsel, knowing full well where to send the summons and complaint, did have the option of service by mail. However, service by mail is not accomplished by simply mailing the summons and complaint, return receipt requested. Service by mail under Rule 4D(l)(b) is completed only when the serving party receives and files a notice and acknowledgement conforming substantially to Form 18-A. This acknowledgment must state that an authorized representative of Advance declared before a notary, under penalty of perjury, that he or she received a copy of the summons and complaint, along with stating the person’s relationship to Advance, as well as his or her authority to receive service of process. M. R. Civ. P. 4D(l)(b), Form 18-A. This is in sharp contrast to the return receipt sent to the Secretary of State saying only that a courier *339 had picked up the mail. Clearly, Plentywood did not comply with the applicable Rule for service by mail. The facts illustrate that this is not a case of “no harm no foul,” as the dissent implies.
¶24 Because Plentywood’s counsel did not attempt to directly serve Advance before affecting service through the Secretary of State, service was improper and did not comply with Rule 4D(2), (3). Failure to affect proper service of process deprived the District Court of personal jurisdiction over Advance, rendering the default judgment void as a matter of law. Ihnot, ¶ 8. The District Court, therefore, erred when it did not set aside the default judgment.
¶25 Reversed and remanded for further proceedings consistent with this Opinion.
CHIEF JUSTICE GRAY, JUSTICES LEAPHART, MORRIS and RICE concur.