DA 12-0476

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 69

PTARMIGAN OWNER'S ASSOCIATION, INC.,
a Montana Corporation,

       Plaintiff and Appellee,

  v.

LEWIS H. ALTON, LLC MONTANA INVESTMENTS
212, DOES 1-20,

       Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DV-11-68D Honorable David M. Ortley, Presiding Judge |

COUNSEL OF RECORD:

       For Appellant:

           Lewis H. Alton (self-represented), Phoenix, Arizona

       For Appellee:

           Michael Alan Ferrington, Attorney at Law, Whitefish, Montana

Submitted on Briefs:  February 13, 2013
Decided:  March 19, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Lewis Alton (Alton) appeals from a default judgment entered in the Eleventh Judicial District, Flathead County. Alton claims that Ptarmigan Owner's Association (Ptarmigan) never properly served him. We affirm.

¶2      Alton presents the following issue on appeal:

¶3      *Whether the District Court slightly abused its discretion by failing to set aside the default judgment against Alton?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4      Alton purchased a house in Ptarmigan Village in Whitefish, Montana. Alton used the Ptarmigan Village house as a vacation home. He lived primarily in Arizona.

¶5      Ptarmigan manages all units that comprise the Ptarmigan homeowner's association, including Alton's house. Ptarmigan collected fees and dues from the owners of Ptarmigan Village units and managed the maintenance and payment of expenses within Ptarmigan Village. Alton stopped paying fees and dues to Ptarmigan.

¶6      Ptarmigan filed a lien on Alton's house in November 2010. Alton owed Ptarmigan approximately $5000 in unpaid fees and dues at that time. Ptarmigan required all homeowners, including Alton, to keep a current address on file to receive correspondence. Alton had listed a Postal Plus mailbox in Arizona rather than a residential address. Ptarmigan routinely sent all of Alton's bills and notices to this Postal Plus mailbox in Arizona.

2

¶7 Ptarmigan served notice of the lien by certified mail to Alton's Postal Plus mailbox in Arizona. Ptarmigan received the certified mail confirmation receipt. Ptarmigan filed a complaint to foreclose on its lien on January 20, 2011. The District Court issued a summons on January 20, 2011. Ptarmigan mailed the summons and complaint to Alton's Arizona mailbox. Alton did not respond. Ptarmigan contacted an Arizona constable to serve the complaint and summons on Alton in Arizona. The Arizona constable failed to locate Alton through the Postal Plus mailbox. The constable returned the summons to Ptarmigan and informed Ptarmigan that Alton had not been served.

¶8 Ptarmigan filed an affidavit in support of service by publication on April 18, 2011. The Clerk of Court issued the Order for Service by Publication pursuant to M. R. Civ. P. 4D(5) (2010). Ptarmigan published the complaint and summons. Ptarmigan also mailed a second copy of the complaint and summons to Alton's Postal Plus mailbox in Arizona.

¶9 Alton failed to appear in response to the published summons. Ptarmigan requested entry of default judgment twenty days after the final publication. The District Court granted default judgment in favor of Ptarmigan on June 13, 2011. Ptarmigan mailed a copy of the judgment to Alton's Postal Plus mailbox in Arizona.

¶10 Ptarmigan filed a motion for issuance of a writ of execution and order of sale on October 26, 2011. The District Court issued the order on October 31, 2011. Ptarmigan mailed these documents to Alton at the Arizona Postal Plus mailbox. Ptarmigan sent a courtesy copy of these documents to Alton via e-mail on November 11, 2011, after Alton informed Ptarmigan that he was in Montana working on his Ptarmigan house. The sheriff

3

noticed the sale and posted notice of the sale on Alton's property on November 29, 2011. The sheriff scheduled the sale for December 27, 2011.

¶11 Alton, appearing pro-se, filed a motion to postpone the sheriff's sale on December 27, 2011. The District Court initially postponed the sheriff's sale. Alton's lender, FIB, foreclosed on the Ptarmigan house, however, thus rendering moot the sheriff's sale.

¶12 Alton also filed a motion for the District Court to set aside Ptarmigan's default judgment on December 27, 2011. Alton argued to the District Court that he had been unaware of the default judgment and the sheriff's sale until the sheriff posted notice of the sale on his property on November 29, 2011. Alton claimed that he had not received any of the documents related to this litigation, including the complaint, the summons, or the judgment, at his Postal Plus mailbox in Arizona.

¶13 Alton maintained that Ptarmigan falsely claimed that it had mailed the documents to his Arizona mailbox. Alton further argued that Ptarmigan possessed Alton's e-mail address and telephone number yet had failed to contact Alton by e-mail or telephone. Alton argued that Ptarmigan's failure to contact him by e-mail or telephone demonstrated Ptarmigan's lack of diligence.

¶14 Ptarmigan submitted an affidavit by Ptarmigan's counsel's secretary, Rita Hanson (Hanson), to refute Alton's claim that he had been unaware of the proceedings against his property until November 29, 2011. Hanson described her efforts to send all of the legal documents to Alton's mailbox in Arizona. Hanson also described receiving a USPS certified mail receipt that demonstrated that the notice of Ptarmigan's lien on Alton's Ptarmigan

4

Village house had been delivered to Alton's Postal Plus mailbox on November 29, 2010. Hanson stated that none of these documents had been "returned to sender."

¶15    Hanson further attested that Alton had contacted her by telephone on August 3, 2011, to inform her that he had received some documents. Hanson believed that these documents were the June 13, 2011, notice of entry of judgment against Alton. Alton inquired whether the date of the sheriff's sale had been set. This question seems to have demonstrated Alton's knowledge of the default judgment and the impending sheriff's sale. Ptarmigan had sent these documents to the same Postal Plus mailbox where it had sent the complaint and summons. Hanson summarized Alton's phone call in an e-mail to Ptarmigan's counsel the same day. Ptarmigan also provided the District Court with an e-mail dated September 3, 2011, from Ptarmigan to Alton that discussed the "Ptarmigan Judgment" and the sheriff's sale.

¶16    Alton provided several e-mails to the District Court that Alton had sent to Ptarmigan. Alton argued that these e-mails demonstrated that Ptarmigan had possessed Alton's e-mail address and telephone number. Alton had listed his e-mail address and telephone number in the signature line at the bottom of the e-mail. These same e-mails also appear to demonstrate Alton's knowledge of the sheriff's sale of his Ptarmigan Village property earlier than November 29, 2011. Alton e-mailed Ptarmigan Village manager Peter Fremont-Smith (Fremont-Smith) on August 4, 2011. Alton stated that "I just rec'd a letter from an attorney in Whitefish indicating that a Sheriff's sale will be affected." In a second e-mail to Fremont-

5

Smith on August 13, 2011, Alton asked why Ptarmigan was "passing of [sic] this matter to an attorney who is threatening a sheriff sale. . . ."

¶17 Pursuant to M. R. Civ. P. 60(c), the District Court had 60 days within which to rule on Alton's motion to set aside the default judgment. The District Court failed to rule on Alton's motion within 60 days, and, thus, it was "deemed denied." M. R. Civ. P. 60(c)(1). Alton appeals.

## STANDARD OF REVIEW

¶18 We do not favor judgments by default. *Nikolaisen v. Adv. Transformer Co.*, 2007 MT 352, ¶ 14, 340 Mont. 332, 174 P.3d 940. We review for only slight abuse of discretion the denial of a motion to set aside a default judgment. *Nikolaisen*, ¶ 14. We will review the district court's conclusions of law to determine if they are correct. *Nikolaisen*, ¶ 14. Whether the district court possesses jurisdiction over the case presents a conclusion of law. *Nikolaisen*, ¶ 14. The party who seeks to set aside a default judgment possesses the burden of persuasion. *Nikolaisen*, ¶ 14.

## DISCUSSION

¶19 *Whether the District Court slightly abused its discretion by failing to set aside the default judgment against Alton?*

¶20 Alton argues that two reasons support his claim that the District Court should have set aside the default judgment against Alton pursuant to M. R. Civ. P. 60(b). Alton first argues that Ptarmigan's defective service voided the default judgment. Alton next claims that Ptarmigan had acted in bad faith to conceal the lawsuit from Alton.

6

*Void*

¶21    M. R. Civ. P. 60(b)(4), provides that a district court can set aside a final judgment if the judgment is void. The District Court never would have possessed personal jurisdiction over Alton if Ptarmigan failed to serve Alton properly with the summons and the complaint. *Mt. W. Bank, N.A. v. Glacier Kitchens, Inc.*, 2012 MT 132, ¶ 16, 365 Mont. 276, 281 P.3d 600. This lack of jurisdiction would void the judgment. *Glacier*, ¶ 16.

¶22    Alton claims that Ptarmigan did not exercise diligence in attempting to locate and serve Alton with the summons and complaint. Alton does not claim that the service by publication itself was defective, but rather that service by publication should not have been permitted due to Ptarmigan's lack of diligence.

¶23    M. R. Civ. P. 4D(5) (2010), sets forth the requirement for service by publication. The plaintiff may seek service by publication under limited circumstances upon the return of summons showing the failure to find a defendant. M. R. Civ. P. 4D(5)(c) (2010). These limited circumstances require the plaintiff to submit an affidavit swearing that (1) the defendant resides outside of Montana; (2) the defendant has departed from Montana; or (3) that the defendant cannot, after due diligence, be found within Montana. M. R. Civ. P. 4D(5)(c) (2010). Further, the plaintiff's affidavit serves as "sufficient evidence of the diligence of any inquiry made by the affiant" provided that the affidavit recites "the fact that diligent inquiry was made." M. R. Civ. P. 4D(5)(c) (2010). The affidavit need not "detail the facts constituting such inquiry." M. R. Civ. P. 4D(5)(c) (2010).

¶24 Alton cannot challenge the efforts undertaken by Ptarmigan to locate him within the State of Montana when Alton admits that he had been in Arizona when Ptarmigan attempted to serve him with the summons and the complaint. Further, Ptarmigan stated in its affidavit that it had exercised due diligence to find Alton in Montana. Ptarmigan's affidavit outlines conduct that demonstrates that Ptarmigan acted with due diligence. M. R. Civ. P. 4D(5)(c) (2010). The circumstances presented here authorized service by publication. Ptarmigan's affidavit satisfied the requirements of the rule, and, therefore, the judgment was not void.

*Misconduct*

¶25 Alton next claims that Ptarmigan had acted in bad faith and deliberately had concealed the lawsuit from Alton. Alton argues that the District Court should have set aside the default judgment pursuant to M. R. Civ. P. 60(b)(3), for misrepresentation or misconduct by Ptarmigan. Alton further argues that Ptarmigan's misconduct rendered Ptarmigan's service of process invalid and the judgment void pursuant to M. R. Civ. P. 60(b)(4).

¶26 Alton cites *Nikolaisen* for the proposition that deliberate concealment of the existence of a lawsuit from the defendant will defeat otherwise valid service. A fire destroyed Plentywood Electronic. *Nikolaisen*, ¶ 3. The State Fire Marshall concluded that Advance had caused the fire. Plentywood Electric filed a lawsuit against Advance. Plentywood Electric did not attempt to serve Advance with the summons and complaint. *Nikolaisen*, ¶ 5.

¶27 Plentywood Electric sent a demand letter to Advance for a sum of money to cover Plentywood Electric's uninsured loss. Plentywood Electric threatened Advance that Plentywood Electric would file a complaint against Advance if Plentywood Electric did not

8

receive a response from Advance. Advance and Plentywood Electric continued to communicate about the damage claim. Plentywood Electric failed to mention that it already had filed suit against Advance. *Nikolaisen*, ¶ 6.

¶28 Plentywood Electric did not serve Advance directly despite being in communication with Advance and having knowledge of Advance's address. Plentywood Electric instead served Advance through the Secretary of State. *Nikolaisen*, ¶ 8. Advance failed to answer the complaint. The district court granted Plentywood Electric's motion for a default judgment. *Nikolaisen*, ¶ 11. Advance requested that the District Court set aside the default judgment as void due to improper service.

¶29 We agreed that Plentywood Electric had not attempted to serve Advance directly, despite knowing Advance's address, before effecting service through the Secretary of State. *Nikolaisen*, ¶ 24. This omission undermined Plentywood Electric's claim that it had been diligent in seeking to serve Advance, as required by M. R. Civ. P. 4D(2)(f) (2010), for service to corporations. This analysis, similar to our discussion in ¶ 22, *supra*, has no application to Ptarmigan's efforts to serve Alton.

¶30 A plurality of the Court noted in a concurring opinion that Plentywood Electric's bad faith actions had "sandbagged" Advance. *Nikolaisen*, ¶ 27. Plentywood Electric had represented to Advance that no litigation was pending and deliberately had prevented Advance from learning about the litigation through proper service. The concurrence further noted that the Rules of Professional Conduct require a lawyer to inform the court "of all material facts known by the lawyer." These material facts included that the plaintiff's

9

counsel possessed current contact information for the defendant and the plaintiff's counsel had not informed the defendant of the pending litigation. *Nikolaisen*, ¶ 27.

¶31 Alton argues that Ptarmigan, like the plaintiff in *Nikolaisen*, had "sandbagged" Alton. We disagree. Nothing in the record indicates that Ptarmigan acted in bad faith. Ptarmigan mailed the notice of the lien to Alton's Postal Plus mailbox in Arizona. Ptarmigan received a certified mail receipt that indicated that Alton had received the document. Ptarmigan mailed the notice of the complaint and summons to the same mailbox. Ptarmigan did not receive an acknowledgement of service by mail from Alton, as required for service by mail. M. R. Civ. P. 4D(b)(i) (2010). As a result, Ptarmigan attempted personal service. Ptarmigan contacted an Arizona constable to attempt to find Alton through the Postal Plus mailbox. The Arizona constable failed to locate Alton through this mailbox. Ptarmigan eventually effectuated service by publication.

¶32 Alton claims that Ptarmigan acted in bad faith despite Ptarmigan's efforts to serve the summons and complaint on Alton. Alton cites the fact that he had been in communication with Ptarmigan before he learned about the litigation. Alton claims that Ptarmigan had not informed him of the pending litigation. Alton further alleges that Ptarmigan knew that Alton did not have knowledge of the pending litigation. Alton alleges that Ptarmigan had acted to conceal the lawsuit from Alton.

¶33 Alton submitted e-mails to the District Court as evidence that he had been in communication with Ptarmigan. These e-mails certainly establish that Alton had been in communication with Ptarmigan. These e-mails, along with an affidavit from Ptarmigan's

counsel's secretary, further demonstrate, however, that Alton possessed knowledge of the pending lawsuit before the date that he claimed to have first learned about it. Alton discussed the pending lawsuit in e-mails as early as August 4, 2011. These e-mails belie Alton's claim that he had no knowledge of the lawsuit until November 29, 2011. These documents further demonstrate that Ptarmigan actively had been communicating with Alton about the litigation rather than attempting to conceal the litigation from Alton. *Cf. Nikolaisen*, ¶ 27.

¶34 Alton called Ptarmigan's counsel on August 3, 2011, to ask about the documents that he had received in the mail at his Arizona mailbox. These documents were the notice of the entry of judgment against Alton. Alton asked whether a date for the sheriff's sale already had been set. Alton e-mailed Ptarmigan on August 4, 2011, and stated that "I just rec'd a letter from an attorney in Whitefish indicating that a Sheriff's sale will be affected." These e-mails and Alton's call to Ptarmigan's counsel indicate that Ptarmigan was not attempting to hide the litigation from Alton. To the contrary, these communications prove that Alton received notice of the lawsuit through Ptarmigan's mailing of the summons, complaint, and judgment to his Postal Plus mailbox in Arizona. Ptarmigan did not act in bad faith to prevent Alton from learning about the lawsuit.

¶35 We conclude that the District Court did not slightly abuse its discretion in failing to set aside the default judgment. Affirmed.

/S/ BRIAN MORRIS

11

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT